### SUCCESSSION OF JOSEPH L. DE BELLISLE.

1. A donation made by a contract of marriage in these words: "he makes also a donation pure and simple to his future wife, her heirs or their descendants, in case his future wife should die before him, of a sum of five thousand dollars, which donation shall take effect at the decease of the future husband, and shall be paid out of the most liquidated (available) funds of the succession of the future husband," must be understood as meaning that the donation is made to the wife, in case she survives the husband, and to her heirs, in case she dies before her husband.

2. Even admitting that the clause partakes of the character of a donation *mortis causa*, it cannot be considered invalidated by Art. 1563, C. C. That article, which prohibits dispositions *mortis causa* being made, except in the form required for acts of last will and testament, must be considered as controlled by the subsequent Articles 1728 and 1738, taken in connection with Articles 2806, 2816, and 2808.

3. The expression in Article 1728, "may give *the whole or a part* of the property they shall have at their decease," cannot be restricted to an institution of heir either universal or by universal title. The word " part " does not mean an aliquot part only, but any portion taken by itself and without considering its relation to the entirety of the succession.

4. Article 1514 C. C., is one of the four referred to in Article 1519, Article 1515 having, by a mistake of the compilers of the Code, been inserted in the wrong place.

5. There is nothing in the donation in question which resembles a prohibited substitution.

APPEAL from the District Court of the parish of Assumption, *Cole*, J. *Malhiot* and *Mills*, for the administrators, appellants.

On the 19th of September, 1850, the late *Joseph L. De Bellisle* and *Marie Azile Duhon*, then widow *Augustin Le Blanc*, entered into a marriage contract, by which, after enumerating the property respectively belonging to each, the said *Joseph* made to the said *Marie*, the following donations:

"En considération du futur mariage le futur époux déclare faire entre vifs pure et simple et irrévocable a la future épouse comme un témoignage de l'affection qu'il lui porte, ce que la future épouse accepte avec reconnaissance, 1o d'une somme en espèces de deux mille piastres. 2o. d'une autre somme de sept cents piastres destinée pour l'achat d'une esclave, laquelle sera achetée au nom de la future épouse par acte authentique et deviendra son bien dotal. 3o. Il fait aussi donation pure et simple à la dite future épouse ses héritiers ou leurs descendants dans le cas où la dite future épouse mourrait avant lui d'une somme de cinq mille piastres, laquelle donation aura effet au décès du futur époux et sera prélevée des biens les plus liquides de la succession du dit futur."

The administrators and heirs of said *Joseph Bellisle*, submit, that said donation of five thousand dollars is null.

The validity of a donation should be tested by first examining its nature; for, although a donation, in its nature a donation *mortis causa*, be passed in an act and form of one *inter-vivos*, it is yet none the less to be considered a donation *mortis causa*, requiring for its validity the forms essential to such donations.

The first two donations of $2,000 and $700 are, in their nature, and as they are termed in the act, donations *inter vivos, pure et simple*, and irrevocable.

The donation of $5,000 is made " à la dite future épouse ses héritiers ou leurs descendants dans le cas vu la dite future épouse mourrait avant lui." This donation (whether *inter vivos* or *mortis causa*,) if grammatically considered, is made under a suspensive condition, to wit: the death of *Marie Duhon* before the donor.

That the death of the apparent donee may form a suspensive condition, Duranton clearly shows. This author says, in Titre, 2 Donation, vol. 5, p. 297; " Par exemple je lègue à Paul dix mille francs, s'il n'embrasse pas l'état ecclésiastique, il faudrait, *stricto jure*, attendre sa mort, pour juger si la condition s'est ou non accomplie ; et en supposant l'affirmative, le legs ne serait payable qu'à ses héritiers. Mais il ne faut pas confondre ce cas avec celui d'un legs fait à quel qu'un lorsqu'il mourra, *cum morietur ;* c'est un legs à terme et voilà tout, En réalité c'est léguer aux héritiers du legataire, et cependant le legs est valable." And adds the author, " Ces décisions étaient suivies dans notre ancienne jurispru-

dence, et il n'y a aucun motif *s'en éloigner sous le code,*" *vide* also, Ricard des Disposition Conditionnelles, No. 301, et suivans.

The $5,000 donation was made, therefore, not to Mrs. *Bellisle*, but only to her heirs or their descendants, and under a suspensive condition. This condition having failed by the pre-decease of the donor before his future wife, the donation falls.

It is, however, contended by counsel of plaintiff that the clause, "dans le cas vu, &c.," creates no suspensive condition, but only a "substitution vulgaire," in favor of the donor's heirs or their descendants; and that it should be interpreted as if written thus: The donor gives pure and simple to said *Marie Duhon* $5,000: but, if she should die before him, then and in that case, the said donation shall go to her heirs or their descendants.

Though such an interpretation might be given to the donation, if required, for its validity—validity in its *nature* and *substance*, not as regards its essential forms —under the rule, *commodissimum est, id accipi quo res, de qua agitur, magis valeat quam pereat;* yet no such necessity exists, because, 1st, the donation, as shown by Duranton, is, in its nature, legal, and its language grammatically construed clearly makes the clause, "dans le cas vu," form a suspensive condition, and 2d, the interpretation which converts the clause into a "substitution vulgaire," renders, as admitted by the plaintiff's counsel, a part of the donation null.

If it be said, that it was evidently the intention of the donor to give to his future wife, as he would not likely, by marriage contract, make a donation which should pass only to her heirs, it may be replied, that, nevertheless, so the donor has seen fit to give, and also, that he could not be supposed to make, by marriage contract, a substitution vulgaire expressly prohibited by law, C. C. Article 1738.

Passing to the next clause, we find that the said "donation *aura effet au décès du futur époux.*" It thus comes within the definition given by the Civil Code to donations *mortis causa.* "A donation *mortis causa* is an act *to take effect* when the *donor shall no longer exist.*" Art. 1455. The donation, therefore, lacking the forms essential to the validity of testaments, must fall under the rigorous rule of C. C., Art. 1563, by which "no disposition *mortis causa* shall henceforth be made, otherwise than by last will and testament."

It is contended, however, by counsel of plaintiff, that to this rule of Art. 1563, an exception is made by C. C. Arts. 1728 and 1738.

By Art. 1728, "Fathers and mothers, the other ascendants, the collateral relation of either of the parties to the marriage, and even strangers, may give the whole or a part of the property they shall leave on the day of their decease, both for the benefit of the parties, and for that of the children to be born of their marriage, in case the donor survive the donee."

Art. 1738 grants to either of the parties to the marriage, the right to make, either reciprocally or the one to the other, the same donations as allowed by Art. 1728, excepting that the donations "shall not be transmissive to the children the issue of the marriage, in case of the death of the donee before the donor."

Are, however, donations allowed by these two articles donations *mortis causa?* To solve this question, it is necessary to first examine the nature of the donations authorized by said articles.

Toullier, (Tit. 2, Donat. vol. 5, No. 830, et suivans,) in commenting on Napoleon Code, Art. 1082, which corresponds with Art. 1728, of Lou. Code, says: "C'est ce qu'on appelait autrefois institution contractuelle." "C'est le don de sa succession en tout ou en partie, c'est pour cela que les dispositions de cette nature étaient appelées autrefois institutions contractuelles," *idem* No. 836. And throughout the chapter 8th, commencing on the "Donations de tout ou de partie des biens que le donateur laissera à son décès, Toullier treats such donations, and applies to them the rules common to the "Institution Contractuelle."

M. Hutteau, in his Abrégé to Pothier Traités Des Donations, tit. 1, Sec. 1, No. 2, vol. 17, page 291, edition 1810, says: "Les donations par contrat de mariage qui ne sont pas de biens présens, sont ou de biens à venir, ou de biens présens et à venir; ou à la charge de payer. des dettes, ou enfin sont dépendantes de la volonté du donateur par la condition qu'il y a imposée. Ces sortes de donations étaient connues plus particulièrement dans notre ancien droit sous le nom d'institution contractuelle. Qui n'était autre chose que le choix d'un héritier." But, adds this author, "Aujourd'hui elles sont plus restreintes, moins en faveur et plus circonscrites."

Duranton, Titre 2, Des Donat, vol. 9, No. 671, commenting on Art. N. C. 1082, says : "On appelle, dans la doctrine, cette donation, Institution contractuelle, parce que, par elle, on institue un héritier, et qu'on le fait par un contrat d'un mariage irrévocable, ce qui n'a lieu que dans ce seul cas, c'est le don de tout ou partie de l'hérédité."

Merlin, (Rep. Verbo Inst. Contractuelle § 1-3, Edit. 1826,) after referring to the prohibition of the former institution contractuelle by the law 17 nivose An. 2, says : "Mais l'art. 1082 du Code Civil a rétablie, à cet égard, les choses sur l'ancien pied."

The donation of Arts. 1082, Nap. Code, and 1728 Lou. Code, "de tout ou partie des biens que le donateur laissera au jour de son décès," being, then, simply the institution contractuelle, it is necessary, therefore, to examine whether the institution contractuelle be a donation *mortis causa*, or *inter vivos*, in order to determine whether it creates an exception to Art. 1563, requiring all donations *mortis causa* to be made by last will or testament.

This has always been a question of much dispute among civilians. Some jurists consider, inasmuch as he who institutes an heir by marriage contract, gives nothing himself while living, but only after his death, prefers himself to the person instituted ; does not preclude himself from alienating the property comprising the donation ; and as the gift is revoked by the pre-decease of the donee, and there is no need of express acceptance, that the institution contractuelle partakes more of a donation *mortis causa*.

Others, inasmuch as the donation is made by a contract, is irrevocable, and divests the donor at once of some of the elements of ownership, and therefore approaching more a donation *inter vivos* than *mortis causa*, consider it to be a donation *inter vivos*, according to the maxim, "Qu'un acte qui participe de deux natures doit être réputé de celle dont il tient le plus. Merlin, Rep. Verbo Inst. Con, Sec. 2 ; Toullier 2, Titre Don., vol. 5, Nos. 836, 837 ; Duranton 2, Titre Donat, vol. 9, No. 672.

Merlin, however, defines the institution contractuelle as "une disposition entre vifs."

The Napoleon Code does not in a positive manner determine whether the donations allowed by it in Art. 1082 should be considered as *mortis causa* or not. And as by its Art. 893, donations are divided into those *inter vivos* or by testament, not like Lou. Code. Art. 1453 into donations *inter vivos* and *mortis causa*, the donations allowed by N. C. Art. 1082, might perhaps be considered as *mortis causa*, although made in the form different from that required for a testament.

Our Civil Code, however, in dividing donations into those *inter vivos* and *mortis causa*, by excepting marital donations from certain rules appertaining to ordinary donations *inter vivos*, by positively declaring that "no disposition *mortis causa* shall henceforth be made otherwise than by will or testament," and without mentioning any exception to this rule, clearly intended to restrict Arts. 1828 and 1838, the institution contractuelle, to donations *inter vivos* : to such donations as should divest the donor at present, and irrevocably, of at least some of the elements of ownership, and not to include those which, like the $5,000 donation of *Bellisle*, should "take effect when the donors shall no longer exist."

The Institution Contractuelle, or C. C. Arts. 1828 and 1838, create, therefore, no exception to the rule of Art. 1563, *vide* also opinion of Judge *Porter*, in the case of *Doucet* v. *Bronsard*, 6 N. S. 196.

The Institution Contractuelle, moreover, is in its nature restricted to universal donations, or those under universal title, such as the whole, one-half, one-third, or some other *aliquot* portion of the donor's property.

Merlin defines it as "une disposition entre vifs et à titre universel." Rep. verbo Int. Con.

This results from the obligation imposed on the donee, as by C. C. Art. 1731, to pay the debts and charges of the donor's succession : for, as says Merlin (*idem verbo*, § XI. 2,) in refuting the doctrine of *Duplessis*, that an heir instituted by contract of marriage, and who had not caused an inventory to be made, was not bound indefinitely for the debts of the succession, but only *pro modo emolumenti*.

"L'héritier contractuel est constamment, un héritier proprement dit ; il l'est autant que celui qui succède en vertu de la loi, or il est de règle que tout héri-

tier paie les dettes de la succession, sans distinguer si elles surpassent les biens ou non ; l'institute par contrat de marriage, qui n'a point fait inventaire, est donc tenu de tout——étant héritier dans toute l'énergie de ce terme, il représente le défunt tant activement que passivement."

How can a donee of a particular sum, to be taken from the most liquidated portion of a succession, be considered as an heir—a person who, under the definition of C. C. Art. 880, " has become the universal successor of the deceased, who is possessed of all his rights and property, and who is subject to the charges for which the estate is responsible, whether he be such by law, by the institution of a testament or otherwise?" Or how can such a donation of $5,000 be considered a gift of the whole or part of a succession, under Arts. 867 and. 868, by which " succession signifies the transmission of the rights and obligations of the deceased to the heirs; also the estate, rights and charges which a person leaves after his death, whether the property exceeds the charges, or whether he has only left charges without any property?"

How to a donation, under a particular title, can be applied the rules universally applied to the Institution Contractuelle, and by Toullier, Duranton and others, to Art. 1082, Napoleon Code, Art. 1728, C. C. How apply the rule of C. C. of 1729, prohibiting the donor from disposing gratuitously of the object of the donation ? Or how could the donor bar himself from alienating it? Suppose a statement of the debts and charges of *Bellisle* existing on the day of the donation had been made, according to C. C., Art. 1730; how could the donation be divided? Should it be considered of property present, or of future property? How fix the amount or aliquot portion of the debts due by the succession of *Bellisle*, which are, under Art. C. C. 1731, to be paid by the donee ? And as this very donation of $5,000 is considered a charge on the succession, it is respectfully asked, what portion of itself should it be decreed to pay, under said Art. 1731, which declares the donee "liable to the payment of all charges and debts of the succession?" Therefore,

Merlin says : " Si cependant la déclaration ou reconnaissance ne comprenait qu'un bien particulier, elle ne formerait qu'une donation entre vifs." Rep. *verbo* Inst. Con., § VI, No. VI.

Malleville, commenting on N. C., Art. 1089, Lou. C., Art, 1734, says : " C'est ici une espèce de droit de retour que le· code établit en faveur des donateurs, pour les cas mentionnés aux articles qu'il désigne ; c'est à dire pour la totalité ou d'une quote de biens, en contrat de mariage,—les donations désignés dans les articles 1082, 1084, et 1086—car ils ne parlent que de celles-là, et non de celles d'une somme fixe, ou d'un objet déterminé." (So quoted by Hutteau in his Abrégé to Pothier, traités des Donat., vol. 17, p. 322, Ed. 1810.)

Hutteau says: "Mais une donation d'une certaine portion à venir, ou de biens présens et à venir, etc, peut-elle être faite à titre particulier ? Nous ne le pensons pas. Celui qui donne en vertu des articles 1082, 1084, 1086, ne peut donner à titre particulier; nécessairement sa libéralité est ou universelle ou à titre universel ; autrement, elle ne peut être qu'une donation entre vifs. " Cela étant, il ne peut y avoir de donataire contractuel à titre particulier, et les donataires contractuels étant ou universel ou à titre universel, sont indispensablement tenus de contribuer aux dettes dans les proportions que nous venons d'indiquer." Abrégé to Pothier, trait. Don. vol. 17, p. 456,Ed. 1810.

Duranton, commenting on Art. N. C. 1082, says: " Par partie des biens que le donateur laissera au jour de son décès, l'on entend, non pas des objets spéciaux et déterminés commeltel fonds, telle maison, en sommes payables de suite ou à une époque fixée, car alors ce serait une donation entre vifs de biens présens, régie par l'article 1081, en ce qui concernerait ces objets ou ces sommes ; et la disposition qui porterait que la donation consistera en tels objets que le donateur laissera à son décès, serait pareillement une donation entre vifs avec réserve tacite d'usufruit ; la propriété des objets indiqués ne passerait pas moins de suite au donataire, sans que la donation fut assujettie à la caducité prononcée par l'article 1089, on entend donc par ce mot—partie, une partie constituant un titre universel ; comme serait la moitié, le tiers des biens que laissera le donateur au jour de son décès." Droit-Français, titre 2, Donat., vol 9, Nos. 676, 761.

Delvincourt asks : " Quid, si un père mariant un de ses enfans, lui donne une somme d'argent à prendre dans sa succession, et avant partage?" and replies, " cet acte ne constituait pas une donation de biens à venir, c'est bien une véritable donation entre-vifs, emportant dessaissèment de la somme donnée." Notes et Explications to page 110 ; p. 423, also p. 424, 427, 428, 429.

The $5,000 donation of *Bellisle* being a donation under a particular title, is not, therefore, an institution contractuelle, nor authorized by C. C., Arts. 1728, 1738.

Marcadé, it is true, considers that Art. N. C. 1082, authorizes a donation under a particular title. He says of such a donation (Tit. 11, Don. vol. 4, No. 280), "Sans doute, ce ne sera plus là l'ancienne institution contractuelle; mais ce sera l'ancienne donation à cause de mort, ce sera une donation de biens à venir."

It has, however, we submit, been clearly shown by the nature of the rules applied by the Nap. and Lou. Codes themselves to Arts. 1082, N. C., and 1728–38, C. C., and by the commentaries of Merlin, Toullier, Duranton, and others, that the donation allowed by said articles is the institution contractuelle. It eventually was also so considered by Judge Porter in the case before referred to, of *Doucet* v. *Brousard*, 6 N. S. 196.

The ancient donation, *à cause de mort*, was, in its nature, the same as the donation *mortis causa* of our Code. It contained the same two essential characteristics; it was revocable, and did not divest the donor of any of the elements of ownership over the thing given till his death. The only change regarding it made by our law was, in requiring it to be made by testament. It essentially differed from the donation of Arts. N. C. 1082, C. C. 1728, in this, that the former was revocable, while the latter is not, *vide* Merlin, Rep. verbo, Don., Sec. 1, § 1; Toullier, tit. 2, Don. Nos. 6, 7, 11; Duranton 2, titre, Don., Chap. V, Nos. 6, 7. Nor, as claimed by Marcadé (*idem*, No. 280,) do Arts. N. C. 947, 943, so affect Arts. N. C. 1082, as to include donations under particular title. Undoubtedly, so far as the institution contractuelle partakes of the nature of "de biens-à-venir," the rule of Art. N. C. 943 does not apply; yet the nature of Art. N. C. 1082 is not changed—neither enlarged nor restricted—it still remains an institution contractuelle.

(*Quere.*—Is Art. 1514 of Lou. Code included in the exception of Art. 1519?)

There is, in fact, now, no such donation as the ancient donation *des biens à venir*. The institution contractuelle is an union *des biens presents et à venir*, and Arts. N. C. 1084, Lou. C. 1730, allow the donee, on an annexation of the statement of debts, to renounce and reject that portion of the institution *des biens à venir*, and reduce the donation to a donation *des biens presens*. Toullier, *idem*, Nos. 855, 856, and note to 855.

The only remaining question to be solved regarding the $5,000 donation of Bellisle is, whether a donation to take effect at the decease of the donor, and to be taken from the most liquidated portion of his succession, can be considered a donation *inter vivos* of present property, allowed by Arts. N. C. 1081, 1092; C. C. 1027, 1037.

(These articles are subject to the general rules prescribed for ordinary donations, *inter vivos*, excepting that they are not annulled by want of acceptance, or on account of ingratitude; they fall if the marriage should not take place, and by the Napoleon Code can include a substitution "en faveur des petits-enfans du donateur." Toullier, *idem*, Nos. 822, 907, N. C. 954, 1088, 1081.)

We consider the rule to be, that if the owner divests himself of the ownership of the object given, and reserves during his lifetime only the *usufruct* thereof, the donation is *inter vivos* of present property.

The donor, if the object be a sum of money, becomes at once the debtor of the donee for its amount, and all his property, both present and future, becomes pledged to the donee for its payment. If, however, the donor does not, in the act, clearly evince his intention of disseizing himself, and at once, of the thing given; or, of rendering his whole property liable therefor, assigning only the property which he may leave at his death, out of which the donation is to be taken,—the donation is not *inter vivos* but *mortis causa*. As the learned Cochin (*tome* 4, p. 395:)—

"Mais il faut en cas que le droit du donataire soit irrevocablement formé sur tous les biens que le donateur possède pendant sa vie, et que le donataire ne soit reduit à se venger sur les biens qui se trouveront au jour du décès du donateur. Ces deux espéces, qui paroissent d'abord avoir quelque connexité, sont cependant essentiellement différentes; je donne 15,000 livres tous mes biens, dont mon donataire ne poura se faire payer qu'après ma mort; cette donation est bonne parce que tous les biens du donateur en sont chargés, soit qu'il les ait encore au jour de son décès, soit qu'il en ait disposé pendant sa vie. Toutes

les dispositions entre vifs qu'il aura pu faire depuis la donation, ne pourront nuire au donataire; ce droit est irrevocablement formé, quoique le paiement soit suspendu. Mais je donne $15,000 liv. à prendre sur les biens que j'aurai au jour de mon décès; cette donation est nulle, parce que le donateur laissera au jour de sa mort, le donateur est maitre de disposer pendant sa vie, et qu'il est aussi libre de vendre, engager, hypothéquer pendant sa vie, tout ainsi que s'il n'avait pas précédemment donné."

See also the two arrets, of the 12 Fevier 1734, and 9, Avril 1735, referred to by him, as mentioned by Hutteau, Edition 1810 of Pothier, Vol. 16, p. 250; and, also, the arrets mentioned on pages 388, 389.

The $5,000 donation of *Bellisle*, therefore, is not valid as an ordinary donation *inter vivos*.

We would also draw the attention of the Court to the wording of the three donations as showing the different nature of the three donations. The first two—those of $2,000 and $700—are termed *"entre vifs* pure et simple et *irrevocable,"* while that $5,000—in a distinct sentence separated from the clause containing the other two donations by a period—is termed, not entre vifs and irrevocable, but only pure et simple.

Another fatal objection to the validity of the $5,000 donation, considered as an ordinary donation inter vivos, is, that it would contain a substitution prohibited by C. C., Art. 1507. Mrs. *Bellisle*, the donee, though at once seized of the naked ownership of the thing given, yet would be charged to preserve it during the life of the donor in order that it might be returned to her heirs or their decendants, who are substituted to the donation in case of her decease before the donor.

True, it would be a conditional substitution; yet, nevertheless, equally prohibited by law; as adjudged in the case of *Rachel tutor* v. *Rachel and husband*, 1 Rob. 117; Toullier, tit. 2. Donat. Vol. V, Nos. 36, 37, and note.

There are other points which might be raised against the validity of this donation, such as the evident intent of the parties to derogate from the legal order of succession, as the clause, *" Les héritiers ou leurs descendants"* evidently referred, and exclusively, to the children and grand-children of Mrs. *Bellisle* by her previous marriage; the respective ages of the parties—the donor being over 70, and Mrs. *Bellisle* 45 years—at the time of the donation, preclude the idea that they intended the children to be born of their marriage. But, after the examination of the case already made, it is considered unnecessary.

The donation, it is submitted, has been shown to be null, because—

1. Its suspensive condition—the pre-decease of Mrs. *Bellisle* has failed.

2. That it is a donation *mortis causa,* and lacks the forms essential to its validity.

3. That it is not a donation allowed by C. C., Arts. 1728, 1738, because 1st, it is a donation *mortis causa,* to take effect only at the death of the donor, containing the *assig net limitatif* of the property which may belong to his succession; while the donations allowed by those articles as affecting the donor's right to some elements of ownership take effect at once, and because the whole property of the donor is affected by it; and 2nd, that the donations of the Arts. 1728 and 1738 are, in their nature, restricted to donations under universal title.

4. That it cannot be considered a donation *inter vivos* of present property, because 1st, it was not to take effect at once, and 2nd, if it were so considered, it would contain a substitution prohibited by law.

*J. H. Ilsley* and *S. L. Johnson,* for the widow *Bellisle,* appellee, say :

The true interpretation of the clause is very obvious. The donor makes a donation to take effect at his death. The last part of the clause leaves no doubt on that point. The object of his bounty is his future wife. To her the law permitted him to make a donation of the whole or a part of what he might leave at his death in this form. But she might not survive him. His good will to her went so far as to embrace the objects of her affection, her children. In case she died before him, and thus could not take the gift, he gave it to her heirs, and their descendants. It is admitted that the gift to her heirs and their descendants could not be made in this form. We are now only enquiring into the meaning of the clause. The only rational interpretation, giving effect to every part, is that which makes him intend the gift for his wife if she survived him, for her heirs, if she did not.

SUCCESSION OF
DE BELLISLE.

The wife has survived her husband, and claims the donation. It was made to her by a marriage contract. No objection is made to the marriage contract as such. It was celebrated in due form, and must have all the effect which the law gives to such an instrument. Articles 1736, 1738, 1739, 1728 2316, show that such a donation as this could be made in this form by one of the spouses to the other, but not by one of the spouses to any stranger to the contract. We have admitted that the second disposition could not be made in this form. But the invalidity of the second disposition does not extend to the first. These dispositions are of the kind permitted by article 1508, and constitute what is known under the name of the direct or vulgar substitution. If the first donee cannot take, another may be called to take in his place. Any number of successive dispositions of this kind might be made by will, and some of them might fail by the incapacity of the donee or legatee to take for any of the causes mentioned in chapter second of the title of donations; some might be void for uncertainty, other legatees might die before the testator; but it was never imagined that the nullity of a posterior disposition of this kind could affect one that was prior to it.

The disposition prohibited by article 1507 is believed to be the only one in which the policy of the law strikes at both the principal and the secondary bequest.

But the record discloses the grounds of opposition of the administrators, and we shall briefly pass them in review.

They are as follows:

"That the suspensive condition of said donation, to wit, the death of said *Marie* before the said *Joseph Bellisle* has failed, and for that reason said donation is at an end.

"That said donation is null and void:

"1. Because said donation is one mortis causa, and lacks all the essential formalities of such donations:

"2. Because said donation is in contravention with article 1738, and other articles of the Civil Code which prohibit the transmission of property in future, by marriage contract to the children and heirs of the donee, in case of her death before the donor.

"3. Because said donation is a donation mortis causa to the children of said *Marie Duhon*, by her former marriage with *Augustin Leblanc* to wit: *Alfred Leblanc, Doralie Leblanc* and *Doradou Leblanc.*

"4. Because said donation creates a substitution and      of the heirs and their descendants of said donee."

The first allegation of the defence is that the suspended condition of the donation, to wit, the death of the donee before the donor, has failed, and therefore the donation is at an end.

This supposes the parties to have intended a donation mortis causa to the wife, conditioned upon her decease. Can any one believe the husband intended to make, or the wife to accept a donation with such a condition:

By our law a donation mortis causa can take effect only in case of the survivorship of the donee. C. C. 1690.

The next allegation of the defence is that said donation is null and void on four grounds; the three first of which attack it as a donation mortis causa; the fourth as a prohibited substitution.

We have already shown that we are not at issue with the defence on the disposition in favor of the wife. Nothing is claimed in their name. Nothing could be given to them, we admit, by this contract. The second and third grounds are thus disposed of.

The first ground we shall briefly answer. A donation mortis causa can be made by marriage contract by one of the spouses to the other; C. C., 1736, 1738, 1739, 1728, 2316, *Fowler* v. *Boyd*; 15 L., 562, *Fabre* v. *Sparks*, 12 R., 21. In the former of these cases it was expressly decided, after a contest, that the disposition mortis causa by marriage contract, was valid, being an exception to article 1563. In the latter case this was assumed without contest. Our antagonists ask if article 1514 is included in the exceptions of 1519. The reasoning in the case of *Fowler* v. *Boyd*, applies to article 1514 as well as to article 1563, and would apply to all the articles included within the exception of article 1519 if that article were omitted. Courts would still give effect to the provisions in chapters 8 and 9 of the title of donations under the rule that all parts of the code must be construed together, and effect given to the whole, general

provisions yielding to those made for particular cases; C. C., 17; *Succession of*   
*Hebert,* 5 Annual, 121.

But it was intended that article 1514 should be excepted from application to the donations of which mention is made in chapters 8 and 9, as articles 1516, 1517 and 1518 are, by article 1519. By a singular inadvertence in compiling the new code of 1825, article 1515 is inserted between two articles, which, in the old code, and in the Code Napoleon, are the first and second of the four articles immediately preceding article 1519. The article 1515 is in these words: "The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals." This article was introduced by the compilers with no other observation than the words "à placer après l'article 43," which is the 1514th article of the new code. The effect of this intrusion is to withdraw article 1514 from the position in which article 1519 would have embraced it, and to bring article 1515 within that position. The effect is simply an absurdity. It will not be pretended that the Legislature intended to sanction illegal and immoral charges and conditions in donations by marriage contract while they are reprobated in all other cases.

We think, then, the insertion of 1515 was accidental and not for the purpose of withdrawing article 1514 from the scope of 1519.

The learned counsel, in their brief, have gone into an investigation of the French authorities upon the nature of *donations mortis causa,* and the *institution contractuelle,* what they are, what they may have been, what they should be. We feel under no obligations to follow them. The ample provisions of articles 1736, 1738, 1728 are sufficient to cover our simple donation.

We dismiss, therefore, without anxiety, the further consideration of the first, second and third grounds of nullity, and come to the fourth and last.

Our zealous opponents are not particular about the consistency of their objections to the donation to the widow. Their first was, as we have seen, that she had lost it by not dying before she could claim it. The last is, that "though at once seized of the naked ownership of the thing given, yet she would be charged to preserve it during the life of the donor, in order that it might be returned to her heirs, or their descendants, who are substituted to the donation in case of her decease before the donor." It is attacked as a substitution of the kind prohibited in the second paragraph of article 1507.

In order to imagine anything of this kind, the plain and obvious intention of the parties is avoided, and their words tortured with a perverse ingenuity into a variety of far-fetched and incompatible meanings and consequences.

A decision of the Court of Cassation in the case of *Merendol* v. *Merendol,* decided June 8, 1812; cited in a note of *Toullier* No. 37, vol. 5, p. 42; found also in the Journal du Palais, v. 10, p. 446, is produced in support of this last objection.

*Jean Merendol,* the testator, instituted *Joseph Merendol* his heir pour du tout jouir et disposer lorsqu'il aurait atteint sa vingt quatrième année; puis il ajoute que, en cas de mort de l'institué avant sa vingt quatrième année, il léguait aux sieurs *Jn. Bte. Carry* et *Jacques A. Merendol* à chacun une somme de 10,000 francs à prendre sur ses biens.

On the demand of the heirs at law, this disposition was held to be a prohibited substitution, and therefore null, even as to the instituted heir; and, the testator being considered intestate as to those 20,000 francs, they were adjudged to belong to the heirs at law.

The ready answer to this case, as well as to that of *Rachal* v. *Rachal,* 1 Rob., 115, also cited in support of this point, is that there is no similarity between either of these cases and the one before the Court. The only interpretation of which we think the clause susceptible, precludes all idea of a charge to preserve and to return, or deliver the gift to any one. On the death of the donor it is to take effect and not before, and in that event it is to vest absolutely in the first donee if she is alive. If she is not charged to preserve and return it to the second donee, the gift to her is absolute and unconditional, "pure et simple," and the subsequent disposition cannot affect it.

The learned counsel for the administrators introduce these two cases to sustain the proposition that the gift of $5000, considered as an ordinary donation, *inter vivos,* would contain a substitution prohibited by C. C. Art. 1507. If on the other hand it be considered a donation *mortis causa,* they contend it is prohibited by the general terms of Art. 1563, and does not come within the donation of future property permitted by Arts. 1728, 1736, 1738, 2316, etc., be-

cause it is a donation of a certain sum, and not of an aliquot part of the succession of the donor.  Art. 1828 permits a donation of the whole or a part of the property the donor shall leave on the day of his decease.  A part of the property, it is said, can only mean an aliquot part and not a certain sum of money.  Duranton on the corresponding Article of the C. N., Art. 1082, is quoted in support of this opinion.  Such a restriction of the usual acceptation of this familiar word ought to be supported by reasons or authority beyond question.  Duranton is combatted by Marcadé on Art. 1082, No. 1, in the following words :

Notre article permet la donation pour tout ou partie des biens que le donateur laissera en mourant.  M. Duranton enseigne (No. 676) que la loi parle seulement d'une partie aliquote, et non de biens donnés à titre particulier ; ainsi je pourrais donner comme biens à venir la moitié, le tiers, le quart de mon patrimoine, mais non pas telle maison ou une somme d'argent.  Mais sur quoi donc se fonde cette décision ?  M. Duranton ne le dit pas ; et il eut été utile de le dire.  Serait-ce sur le sens du mot partie ? mais la libéralité d'une partie des biens s'entend d'une disposition à titre particulier (Arts. 895, 1048, 1049, etc.).  Sans doute, ce ne sera plus là l'ancienne institution contractuelle ; mais ce sera l'ancienne donation à cause de mort, ce sera une donation de biens à venir.  Où est le texte qui restreigne cette donation de biens à venir à la disposition à titre universel ? . . . M. Duranton veut que toute donation d'objets particuliers soit toujours considérée donation de biens présents : ainsi, quand j'ai donné tels objets déterminés pour que le donataire les prenne à mon décès, c'est là, dit-il, une donation ordinaire, opérant le dépouillement actuel et irrévocable, et contenant seulement une réserve d'usufruit pour le disposant.  Mais en vérité ce n'est pas là traiter la question, c'est se placer a côté . . . Supposons que j'aie dit positivement : "Je vous donne 20,000 fr., à prendre sur ma succession," ou bien : "je vous donne ma maison, mais comme bien à venir, en tant seulement qu'elle sera plus tard dans ma succession et que je n'en aurai pas disposé à titre onéreux (Art. 1083) :" dans ce cas, il faudra bien avouer que ce n'est plus une donation de biens présents ; et il faudra répondre nettement à la question de savoir si cette donation est nulle ou valable.  M. Duranton dira sans doute qu'elle est nulle ; mais il nous paraît évident, comme à M. Coin-Delisle (Nos. 14-18), qu'elle est parfaitement valable.  Sans doute elle serait sans effet dans les cas ordinaires, d'après l'Art. 943, qui déclare nulle toute donation de biens à venir ; mais elle sera valablement faite à un époux par son contrat de mariage, d'après notre Art. 1082, et d'après l'Art. 947 qui déclare que l'Art. 943 ne s'applique point aux donations dont parle notre chapitre.—Il existe plusieurs arrêts conformes, notamment un de rejet sur arrêt de Rouen du 13 juillet 1835.

The comments of Coin-Delisle on the same question are equally worthy of attention : "Donations et Testaments, C. N. 1082, Art. No. 14, p. 558.  La donation des biens à venir par contrat de mariage peut avoir plus ou moins d'étendue.  Quand elle défère la totalité de la succession, ou une quote-part de la succession, ou la totalité d'une espèce de biens, elle est universelle, suivant les règles appliquées aux legs par les Arts. 1003 et 1010 : c'est alors qu'elle mérite le nom d'institution contractuelle.  Elle peut aussi être faite à titre particulier, quand elle consiste soit dans une somme fixe, soit dans un effet déterminé ou désigné par sa nature, lesquels n'appartiendront au donataire qu'autant qu'ils se trouveront dans la succession du donateur.  Dans ce cas, ce n'est pas une institution contractuelle, mais une donation qui a certains effets, et qui reçoit dans la pratique le nom bizarre de donation contractuelle qu'on doit bannir de la langue du droit.

"No. 15.  Il y a cependant des auteurs qui ne voient de donations de biens à venir permises par l'Art. 1082, qu'autant qu'elles seraient faites universellement ou à titre universel ; et ils fondent cette opinion sur ces mots de l'article : "Tout ou partie" qu'ils opposent l'un à l'autre, de sorte que le premier indiquerait la faculté de donner l'universalité ; et le second, celle d'instituer dans une quote des biens qui se trouveraient au décès, (M. Duranton, No. 676 ; M. Poujol, No. 2, sur l'article ;) c'est là une erreur évidente.  Dans la langue du code civil, le mot *partie* opposé au mot *tout* ne signifie pas seulement une partie aliquote considérée dans son rapport avec l'entier, il signifie encore une fraction quelconque prise isolément et sans corrélation mathématique avec la masse dont elle est détachée.  C'est ainsi que les mots "tout ou partie" sont employés dans Art. 895, 1048 et 1049 du code civil et dans la loi du 17 mai 1826, où

ils expriment le pouvoir de disposer par testament non-seulement universellement et à titre universel, mais encore à titre particulier.

Tenons donc pour constant qu'il y a sous le code civil des donations à titre particulier des biens à venir, qui ont un effet à peu près semblable aux simples legs, comme il y avait sous l'ancien droit des donations à cause de mort à titre particulier par contrat de mariage.—See also the Nos. 17, 18."

Rejet sect. civ. 7 ventose an xiii. Rejet 15 juil. 1835. Articles 1048, 1049 C. N. quoted by Coin Delisle have no corresponding Articles in the L. C. But Art. 895 corresponds to 1455 L. C. The words "dispose of the whole or a part of his property" in this Article embrace legacies under every title. On the other hand, in Art. 1604, a legacy under a universal title is defined in the English text to be the bequest of a certain proportion of the effects of which the law permits him to dispose, as a half, a third, &c.; in the French text to be that by which "le testateur lègue une quote part des biens dont la loi lui permet de disposer, telle qu'une moitié, un tiers, ou tous ses immeubles, ou tout son mobilier, ou une quotité fixe de tous ses immeublès ou de tout son mobilier."

The legislator defined dispositions under universal title with fullness and precision in Art. 1604, and employed the words "whole or part" in Art. 1455, in their common acceptation, to embrace dispositions under particular or universal title. To use the same expression in Art. 1728, with another meaning, would be making a trap of the law instead of a rule. The simple word *aliquot* in the English text, *quote-part* in the French, would have sufficed to express the sense for which Duranton contends, if such had been the legislative will.

The decisions referred to by Marcadé and Coin-Deslisle fully sustain them. That of Wendel, or de Vendel, Cassation, March 1, 1821, is found in the Journal du Palais, vol. 16, p. 417, in Dalloz, Alph. 6, 212. By a first disposition, the father and mother in the marriage contract of their son, give and secure to him "dès à présent en la meilleure forme que donation puisse être, 150,000, liv," and by a second disposition it is said that this sum is to be taken out of their succession before partition, &c. It was held that, interpreting the first disposition by the second, the intention of the father and mother had not been to deprive themselves from that time of the faculty of disposing of their property by onerous title, but simply that said sum should be taken out of their successions, that is to say, out of such property as might be found in them when they should be opened: that in this respect the donation was not to produce other effects than those "d'une institution contractuelle," according to which the donee or institué cannot exercise his rights except on such property as the father and mother have not disposed of by onerous title, and which may be found existing in kind in their successions.

The court will not fail to remark the absence, in the disposition in our favor, of any expression like the "dès à présent," in this case.

The case of *de Villequire* v. *de Cayeux*, Cass. 15 July, 1835, J. du Pal. 27, p. 456; Dolloz P. 1835, part 1, p. 393, referred to by Marcadé, was determined in a similar manner, although many features in the dispositions favored the views of those who saw in them nothing but donations *inter vivos*, with a term for payment, or a reservation of the usufruct for life.

May we not say then that the weight both of authority and of reason are against the assumption of Duranton, that the word "part" in Art. 1728 means an aliquot part?

We have sought for the most rational interpretation of the clause, and have found, we think, one that is neither strained nor far-fetched, one that expresses the intention of the parties, and gives, so far as the form of the act permits, effect to every word, one, in the actual contingency, making a gift that is so far favored by the law as to enjoy the exceptional privilege of being valid in its present form. The zeal with which this gift is contested, must be our excuse for the perhaps uncalled for length of this discussion.

BUCHANAN, J. The marriage contract between *Joseph Leborne de Bellisle* and *Marie Azelie Duhon*, contains the following clause: "En considération du futur mariage, le future époux déclare faire donation entre-vifs pure et simple et irrévocable, à la future épouse, comme un témoignage de l'affection, qu'il lui porte, ce que la future épouse accepte avec reconnaissance.

1o. D'une somme de deux mille piastres.

2o. D'une autre somme de sept cents piastres, destiné pour l'achat d'une esclave, laquelle sera achetée au nom de la future épouse, par acte authentique, et deviendra son bien dotal.

3o. Il fait aussi donation pure et simple à la dite future épouse, ses héritiers ou leurs déscendants, dans le cas où la dite future épouse mourût avant lui, d'une somme de cinq mille piastres, laquelle donation aura effet au décès du futur époux, et sera prélevée des biens les plus liquides de la succession du dit futur."

*Joseph Leborne de Bellisle* is dead. His wife, surviving him, claims five thousand dollars under the third division of the foregoing clause of the marriage contract. The claim is resisted by the testamentary executor, on the grounds :

1st. That the donation of five thousand dollars is made on a suspensive condition, to wit, the death of *Marie Azelie Duhon,* before the donor.

2d. That the donation in question, being intended on its face to take effect only at the death of the donor, is in reality a donation *mortis causa ;* and as such, is invalid, not being clothed with the forms required by law for a last will and testament.   C. C. 1563.

3d. That the donation in question is not good under Articles 1728 and 1738 of the Code, because those articles only authorize the contractual institution of heir, for the whole or for an aliquot portion of the donor's estate, and not for a specific sum of money.

4th. That the clause in question, violates the Article 1738 of the Code, inasmuch as it makes the donation transmissive to the heirs of the donee, in case of her death before the donor.

5th. That the donation is void by Article 1507 C. C. as containing a substitution.

Upon the first point, we are clear that the words used in the clause under consideration, are to be understood as meaning, that the donation is made to to the wife, in case she survives the husband; and to her heirs, in case she dies before her husband.   There is some awkwardness in the mode of expression; but our interpretation is necessary to prevent an absurdity and self contradiction in the disposition.

Upon the second ground of objection, even admitting that the clause partakes of the character of a donation *mortis causa,* yet we cannot consider it invalidated by the Article 1563 of the Code.   That article, which prohibits dispositions *mortis causa* being made, except in the form required for acts of last will and testament, must be considered as controlled by the subsequent Articles 1728 and 1738, taken in connection with Articles 2306, 2316 and 2308. By the last named article, every marriage contract must he made before a notary and two witnesses.   All stipulations, therefore, which may be legally inserted in a marriage contract, are sufficient in point of form, if witnessed by a notary and two witnesses, although that number of witnesses would not suffice to give the act effect as a noncupative testament.   See *Fowler* v. *Boyd,* 15 La. 562.   *Fabre* v. *Sparks,* 12 Rob. 21.

The third ground assumed by the counsel of the executors, assumes as correct the interpretation given by Duranton to the Article 1082 of the Code Napoleon, from which our Article 1728 has been literally copied.   " May give the whole or a part of the property they shall leave at their decease," are the expressions used in both articles.   These words, according to Duranton, require

an institution of heir either universal or by universal title. But we prefer the interpretation of Coin-Delisle (Donations et Testaments, C. N. 1082, No. 15). "Dans la langue du Code Civil," says that author, "le mot *partie* opposé au mot *tout* ne signifie pas seulement une partie aliquote considérée dans son rapport avec l'entier, il signifie encore une fraction quelconque prise isolément et sans corrélation mathématique avec la masse dont elle est détachée." And he gives numerous examples in proof of this assertion. The logical and accurate Marcadé likewise combats the opinion of Duranton in this respect, and sets the seal of his approbation upon the doctrine of Coin-Delisle. Code Civil, Art. 1082, No. 1.

It is perhaps unnecessary to observe, in connection with this discussion, that the District Judge is correct in stating, in his judgment, that Article 1514 of the Code is one of the four referred to in Article 1519; the Article 1515 having, by a mistake of the compilers of the Code, been inserted in the wrong place.

The fourth objection of the executors' counsel might be well taken, had Mrs. *De Bellisle* died before her husband, and even her heirs, issue of this marriage, prosecuting the recovery of the donation of five thousand dollars. But that case has not arisen.

The evidence does not even inform us that there was any issue of the marriage of these parties, and the terms of the Article 1738 apply to no other heirs, but such as are the issue of the marriage.

The fifth objection to the donation is entirely groundless. There is nothing which resembles a prohibited substitution—an obligation to preserve for, or to return the thing to, a third person—in the contract under review.

Judgment affirmed, with costs.