PLUCHE et al. v. JONES et al.

(Circuit Court of Appeals, Fifth Circuit. January 9, 1893.)

No. 44.

1. DONATIO CAUSA MORTIS — MARRIAGE CERTIFICATE AND CONTRACT — LOUISIANA AND TEXAS LAWS.

A Hebrew marriage certificate, dated New Orleans, June 30, 1836, and containing a contract as to the disposition of land (donated to the bride by a previous marriage contract) after the death of the parties, and purporting to be signed by the bride and groom, two witnesses, the rabbi, and a person styling himself "secretary," was ineffective as a donatio causa mortis; for it was not in accordance with the formalities then required in such case either by the law of Louisiana, where it was executed, or of Texas, where the land was situated.

2. SAME—CONVEYANCE OF LAND.

Such certificate could not operate as a conveyance of the land, for it did not purport to convey any property otherwise than by ratifying the donation previously made, and it was not such an instrument as could pass title to land in Texas.

3. LIMITATION OF ACTIONS—RUNNING OF STATUTE—REMAINDER-MAN.

Rev. St. Tex. art. 3194, requiring suit to be brought within 10 years after the cause of action shall have accrued, does not run against a remainder-man during the pendency of the life estate. Cook v. Caswell, 17 S. W. Rep. 385, 81 Tex. 678, followed.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

Action of trespass to try title brought by Adelaide J. Pluche, Jeanette Lyon, Albert Emanuel, and others, against D. M. Jones and others. The circuit court instructed the jury to return a verdict for defendants, and gave judgment accordingly. Plaintiffs bring error. Reversed.

H. C. Mayer, (H. Chilton and Ben B. Cain, on the briefs,) for plaintiffs in error.

H. M. Whitaker, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. The facts necessary to the consideration of this case sufficiently appear in the following extracts from the bill of exceptions found in the record:

A jury having been duly impaneled and sworn, as the law provides, plaintiffs read their second amended original petition, filed January 17, 1891, being a formal petition of trespass to try title, under the statutes of Texas, to the following property, to wit: "A certain tract of land," etc. Defendants read their answer, consisting of plea of not guilty, special pleas of three, five, and ten years' limitations, and improvements in good faith, under said statutes of Texas; also disclaimers by each defendant to all the land sued for, except the number of acres claimed by each of them, respectively. Plaintiffs prove title from sovereignty of the soil to Sarah Ann Duncan, as colonist, June 16, 1835, for all the land sued for, to wit, the Sarah Ann Duncan league of land, and title from Sarah Ann Duncan to Albert Emanuel for an undivided half of said league, June 25, 1836. Plaintiffs next offered in evidence copy of a marriage contract between Albert Emanuel and Louisa Clarentina Hart, dated June 29, 1836, as follows, to wit:

"Marriage Contract.
"Louisa C. Hart with Albert Emanuel.
"29th June.

"Be it known that this day, before me, David L. McCay, a notary public in and for the city of New Orleans, duly commissioned and sworn, herein representing William Boswell, a notary public, now absent from the state, duly authorized by a resolution of the legislature of this state, approved on the second day of March last past, 1836, personally came and appeared Miss Louisa Clarentina Hart, of this city, aged twenty-two years, legitimate daughter of Simon Moses Hart and Rachel Levy, dwelling in this city, the said daughter herein proceeding with the consent and assistance of her said father and mother, present with her, and stipulating in her own name, of the one part, and Mr. Albert Emanuel, of the state of Coahuila and Texas, aged twenty-eight years, legitimate son of Joseph Emanuel and Adelaide Hart, of Arolson, Prime Walder, Europe, the said appearer herein stipulating in his own name and behalf of the other part, which appearer declared that in contemplation of the intended marriage which they bind themselves, each to the other, to solemnize whenever thereunto required, either of them by the other, they have made, and by these presents do make, the following matrimonial agreements: There shall be a community of acquests and gains between the said parties, and the same shall be regulated by the Civil Code now in force in this state, all laws, customs, and usages of other countries to which they may hereafter remove to the contrary notwithstanding. All debts contracted previous to said intended marriage shall be borne and paid by the party with whom they shall have originated, and the other party and his or her estate shall not in any manner, nor under any circumstances, be made nor held liable therefor. And thereupon the said intended husband declared that, as a testimony of his affection to his said intended wife, he does hereby make unto her donation

inter vivos propter · nuptias of the following described lands, situated in Texas:

(1) Two thousand nine hundred and fifty-two acres of land, situated near the Neches, on the waters of Elkhart creek, the estimated value of which is two thousand dollars.................................$ 2,000

(2) Three thousand and seventy acres of land fifteen miles from Soda lake, and twelve miles from the line which divides the United States from the republic of Mexico, the estimated value of which is two thousand dollars..................................................... 2,000

(3) Three thousand and seventy acres of land located on the river Attoyac, the estimated value of which is two thousand dollars...... 2,000

(4) Two thousand nine hundred and fifty-two acres of land near the Sabine bay, the estimated value of which is two thousand dollars.... 2,000

(5) Two thousand nine hundred and fifty-two acres of land adjoining · the above-described tract, the estimated value of which is two thousand dollars...................................................... 2,000

(6) Two thousand nine hundred and fifty-two acres of land situated on the borders of the Sabine, about two miles from the mouth of the river Neches, the estimated value of which is two thousand dollars.. 2,000 ·

(7) Eleven thousand and seventy acres of land situated above and below the main road leading from Nacogdoches to Gains' Ferry, between the Bayou Palagacho and Sabanillo or Bridges' creek, the estimated value of which is eight thousand dollars.................... 8,000

$20,000

—Amounting in the aggregate to the sum of twenty thousand dollars; which donation is hereby accepted by the said intended wife, which tracts of land were acquired by the said Albert Emanuel from Mr. John S. Turner, by act passed before David L. McCay, representing the said William Boswell, notary public, on the twenty-eighth day of June, current. '

"Done and passed at New Orleans, in presence of Edward Barnett and Francios N. Mioton, witnesses, who have signed their names with the parties and me, notary, on this twenty-ninth day of June, in the year of our Lord one thousand eight hundred and thirty-six, and sixtieth of the independence of the United States of America."

Plaintiffs next offered in evidence original Hebrew marriage certificate, dated June 30, 1836, with depositions of Henry Cohen, in which he states that he is acquainted with the English language, and can both speak and write it, and also the Hebrew language, and that he can translate the latter into English. He says: "I have examined the parchment in question, and find it is written in Rabbinical Hebrew. It purports to be executed in Orleans, America, and is dated, according to computation of time in this country, the 30th of June, 1836. It purports to be a marriage certificate and a contract as to the disposition of property between the bride and. groom mentioned in the certificate, both of the property mentioned in the body of the certificate and that left' upon their death. I annex the translation to my' answer, marked 'B' by the notary. It is customary to leave the marriage certificate in the hands of the family of the bride."

The translation is as follows:

"B.

"Translation of Hebrew Marriage Contract.

"On the 4th day from Sabbath, the 15th of the month of Tamuz, in the year 5596 from the creation of the world, according to the date which we date here in Orleans, in America, he, Mr. Albert Emanuel, the son of Mr. Judah, of the same surname, says to her, this virgin Louisa, the daughter of Mr. Simon Hart, 'Be thou my wife according to the law of Moses and Israel, and I will serve and honor and maintain and sustain you after the manner of Jewish men, who serve, honor, and maintain and sustain their wives faithfully. And I bring you as a maiden gift 200 silver zuzim, to what you are by law entitled, and your maintenance and your clothing and your support, and all other requirements to which you are entitled according to the custom of all the world.' And this

virgin Louisa consents and becomes to him a wife, and the dowry that she brings to him from the house of her father, whether in silver or in gold, whether in ornaments or presents of clothing or of bed furniture, three hundred dollars' worth. And this bridegroom, Mr. Albert Emanuel, consents and adds to it from his own property twenty thousand dollars' worth as an inheritance in the state of Texas, making altogether $20,300 worth. And thus says this bridegroom, Mr. Albert Emanuel, 'The responsibility of this written contract and this supplement and this dowry I have taken upon myself even to the coat from off my shoulders, in life or in death, from this day, and forever.' And the responsibility of this written contract, and the supplement he takes upon himself, this bridegroom, Mr. Albert Emanuel, as well as the onus of all copies of this contract and supplement, as is customary among the daughters of Israel, which are made after the dicta of our sages of blessed memory, and not the empty form, and not a useless contract; and a pledge from Mr. Albert Emanuel, this bridegroom, to Louisa, the daughter of Mr. Simon Hart, according to all that is written and explained above, in the proper way pledged by him to be all completed and thoroughly established.

[Signed]                "Rabbi Menachem, the Son of Jacob, Minister.
[Signed]                "Albert Emanuel, Bridegroom.

"Witnesses:

"Abraham, the Son of Moses, Righteous Judge.
[Signed]  "Sam'l Hyams and Joseph De Pass.

"The conditions agreed upon between the bride and groom that if, God forbid, the groom dies, the survivor becomes the heir, then her children, and if the bride, God forbid, dies, the groom becomes the heir, according to our holy law, the husband becoming the heir of the wife. And the groom, the above-mentioned Albert Emanuel, entitles the above-mentioned bride, Louisa, daughter of Mr. Simon Hart, from now to all the proper and established gift above mentioned, all of which is proved and clearly established.

[Signed]                "Albert Emanuel, Groom.
                      "Louisa Hart, Bride.

"Witnesses:

"Abraham, the Son of Moses, Righteous Judge.
"Samuel Hyams and Joseph De Pass.

"Attest: [Signed.] A. J. Marks, Secretary."

Plaintiffs proved that Albert Emanuel died, intestate, August 8, 1851, and left surviving him Mrs. Louisa C. Emanuel, his wife, and these plaintiffs, her children by said Emanuel, who were and are his only surviving heirs at law; that Mrs. Louisa C. Emanuel died on the 16th day of November, 1888, Defendants proved title to themselves from James Boulter for 1,376 acres of said league of land, and from Charles Baldwin to 1,027 acres of said league of land. Boulter derived title to an undivided half of said league from Mrs. Sarah Ann Duncan, and Charles Baldwin derived title to the other one half by deed from Mrs. Louisa Emanuel, dated January 2, 1855, also another deed, dated February 10, 1860, both deeds conveying all her interest in said league of land, to wit, all her right, title, and interest; also proved partition between Boulter and Baldwin interest on the 1st day of March, 1867. Defendants also proved continuous occupation of the different tracts claimed by them for 10 years prior to the bringing of suits, and, in case of B. D. Harry, payment of taxes and deeds duly registered; also value of lands without improvements. The vital question was as to construction of said marriage certificate. The court instructed the jury as follows: "It has been shown by the marriage contract offered in evidence that, at the death of Albert Emanuel, Louisa C. Emanuel, his wife, took an absolute title in fee simple to the land in controversy, and, she having conveyed the same to Charles Baldwin, the plaintiffs in this suit have no title to the same. You will therefore find for defendants."

A verdict having been rendered for the defendants, in accordance with the charge of the court, and a judgment entered thereon, the plaintiffs, after vainly moving for a new trial, because of the alleged

erroneous charge of the court, brought the case to this court for review, assigning error as follows:

"The court erred in his charge to the jury, which was as follows, to wit: 'It has been shown by the marriage contract offered in evidence that, at the death of Albert Emanuel, Louisa C. Emanuel, his wife, took an absolute title in fee-simple to the lands in controversy, and, she having conveyed the same to Charles Baldwin, the plaintiffs in this suit have no title to the same. You will therefore find for the defendants.' And it was erroneous for the court to refuse plaintiffs' motion for a new trial, pointing out the errors complained of in said charge, as follows, to wit: 'First. The marriage certificate charged to be a marriage contract is not and was not a marriage contract, but, if anything at all, a mere attempt to make a donation mortis causa under the laws of Louisiana; and not being made in accordance with law, but against it, was absolutely void, and of no effect. Second. Said marriage certificate was not a conveyance of property. It was not such an instrument as passed title to real property in Louisiana or Texas, and, as such, is and was of no force and effect, and in fact a nullity. Third. If said certificate was in effect a conveyance of property, the same was not offered in evidence by defendants as a link in their chain of title or otherwise; and the same could not and did not form a part of their title before the jury. Fourth. If said marriage certificate was a valid contract conveying property, yet it could not and did not take effect until the death of the donor, Albert Emanuel, August 8, 1851, and was governed by the laws then in force and effect. If it passed any title at all from Albert Emanuel to Mrs. L. C. Emanuel, the title so passed was a life estate in the separate property of said Albert Emanuel, with remainder vested in her children, and Mrs. Emanuel did not acquire an absolute title, as charged.'"

It does not appear from the record whether the marriage contract referred to in the charge complained of was the marriage contract which was passed before a notary and two witnesses on the 29th of June, 1836, or the marriage certificate with supplemental agreement, which was entered into on June 30, 1836, before the Jewish rabbi and two witnesses, or both together, considered as contemporaneous and interdependent contracts. The former appears to have been a regular marriage contract, entered into and duly passed before a notary and two witnesses, according to the forms provided by the laws of Louisiana then and now in force. It, however, makes no disposition or proposed disposition mortis causa, nor does it appear that the lands in controversy were referred to therein; certainly not unless embraced within the vague description of the 11,070 acres of land situated above and below the main road leading from Nacogdoches and Gains' Ferry between the Bayou Palagacho and Sabanillo or Bridges' creek, the estimated value of which was $8,000. The record negatively shows that the lands in controversy were not embraced in said marriage contract, because the statement is made therein that the lands donated were acquired by the said Albert Emanuel from Mr. John S. Turner by act passed before David L. McCay, notary public, on the 28th day of June, 1836; while it appears from the plaintiffs' evidence that the land in controversy was acquired by Albert Emanuel from Sarah Ann Duncan on June 25, 1836. The marriage certificate refers to the dowry brought by the bride of $300 worth, and states that to this Mr. Albert Emanuel consents, and adds from his own property $20,000 worth as an inheritance in the state of Texas; the parties evidently having in mind the donation inter vivos propter nuptias

described in the marriage contract. To the marriage certificate is attached a provision signed by the contracting parties, witnessed by "Abraham, the Son of Moses, Righteous Judge," and "Samuel Hyams and Joseph De Pass," as follows:

"The conditions agreed upon between the bride and groom that if, God forbid, the groom dies, the survivor becomes the heir, then her children, and if the bride, God forbid, dies, the groom becomes the heir, according to our holy law, the husband becoming the heir of the wife. And the groom, the above-mentioned Albert Emanuel, entitles the above-mentioned bride, Louisa, daughter of Mr. Simon Hart, from now to all the proper and established gift above mentioned, all of which is approved and clearly established."

This provision states the agreement and will of the parties with regard to the disposition mortis causa of the respective estates of the married couple.

The first contention of the plaintiffs in error in this court is that the marriage certificate charged to be a marriage contract is and was not a marriage contract, but, if anything at all, a mere attempt to make a donation mortis causa under the laws of Louisiana; and, not being made in accordance with law, but against it, it was absolutely void, and of no effect. At the time of the marriage of Albert Emanuel and Louisa Hart, marriage contracts in Louisiana were required to be made before a notary and two witnesses, and, when so made, could validly contain all stipulations with regard to donations inter vivos and mortis causa that were permitted by the law of Louisiana. Fowler v. Boyd, 15 La. 562; Succession of Bellisle, 10 La. Ann. 468–478. At the same time the law of Texas, which was the Spanish civil law, permitted parties intending to enter the marriage state to enter into such stipulations as they pleased, provided the agreement have nothing in it unlawful, dishonest, or forbidden by custom, (1 Domat, Civil Law, § 846;) and it would seem that under that law a marriage contract containing dispositions mortis causa should be executed and passed with the witnesses and formalities required for testaments, which are as follows:

"(1) Testament is a testimonial in which is contained and set forth the will of him who makes it, establishing or appointing his heir, and disposing, as he thinks fit, of his property after his death. L. 1, tit. 1 p. 6. It is of two sorts,— open and closed. The open or nuncupative will ought to be executed before a public escribano and three witnesses, inhabitants of the place; and, if the testator is blind, five are necessary; and, if there is no escribano, five witnesses of the place are requisite, unless they cannot be met with, and then three inhabitants of the place, or seven strangers or nonresidents, will be sufficient. L. 1, tit. 4, lib. 5, Rec. The closed or written will, which is made in secret, according to L. 2, tit. 1, p. 6, is delivered to the escribano, signed on the outside by the testator and seven witnesses, with the attestation of the escribano. L. 2, tit. 4, lib. 5, Rec." 1 White, New Recop. p. 98.

See, also, Schmidt, Civil Law Spain & Mex. 214.

The statute of the state of Texas of January 20, 1840,—and which seems to have been the law since that time,—permits parties intending to enter the marriage state to enter into such stipulations as they please, provided they are not contrary to good morals or to some rule of law, but prohibits any agreement in the marriage contract the object of which would be to alter the legal order of descent either with respect to themselves or what concerns the in-

heritance of their children or posterity which each may have by any other person, or in respect to their own children. Pasch. Dig. art. 4632; Rev. St. Tex. art. 2847. The same law provided that every matrimonial agreement must be made by an act passed before a notary and two witnesses. Pasch. Dig. art. 4633. It thus appears that both at the time the marriage contract was entered into and at the time Albert Emanuel died, (1851,) under neither the law of Louisiana, where the contract was made, nor the law of Texas, where the property sought to be affected is situated, was the marriage certificate with its supplemental contract made and executed according to the forms required by law. It seems to follow that the contention of the plaintiffs in error as to the nullity of the said certificate and supplemental agreement as a marriage contract is well taken.

The plaintiffs in error next contend that the marriage certificate and supplemental contract were not a conveyance of property, and, not being such an instrument as passed title to real property in Louisiana or Texas are and were of no force and effect. The said document was not intended to convey real property, nor does it purport to convey any property otherwise than in ratifying the donation inter vivos propter nuptias of the day before. It is therefore clear that it cannot be construed as conveying title to the property in controversy. These conclusions render it unnecessary to discuss the other objections urged against the marriage contract and the marriage certificate with supplemental agreement. As the marriage contract does not affect the property in controversy, and as the marriage certificate, with supplemental agreement, is of no effect as a disposition mortis causa, and is ineffectual as a conveyance of property, the charge of the court directing a verdict on the ground that "it has been shown by the marriage contract offered in evidence that, at the death of Albert Emanuel, Louisa C. Emanuel, his wife, took an absolute title in fee simple of the lands in controversy," was erroneous.

The defendants in error, however, contend that, although the reasons given by the court for instructing the jury to find for the defendants may be erroneous, nevertheless, if the conclusion is correct, and can be sustained by the other facts in evidence, the judgment ought not to be disturbed; and they rely, under the facts stated in the bill of exceptions, upon the following statute as a bar to plaintiffs' claims, to wit:

"Any person who has the right of action for the recovery of any lands, tenements, or hereditaments against another having peaceable and adverse possession thereof, cultivating and using and enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterwards." Rev. St. Tex. art. 3194.

The recitals in the bill of exceptions show that the defendants had title derived from Mrs. Louisa Emanuel by two deeds, one dated January 2, 1855, and the other February 10, 1860, both deeds conveying all her interest in the league of land in controversy, to wit, all her right, title, and interest; and that the defendants proved continuous occupation of the different tracts claimed by them for

10 years prior to the bringing of the suit. It is not, however, shown that the occupation referred to was peaceable and adverse, or that the defendants were cultivating, using, and enjoying the property. In fact, several presumptions, not warranted by the recitals in the bill of exceptions, must be made in behalf of the defendants in order to bring their case within the bar of the statute. There is another, and perhaps a better, answer. Albert Emanuel died, intestate, in 1851, leaving his wife and children surviving. Although Mrs. Emanuel took no estate in Albert Emanuel's lands, under the stipulation attached to the marriage certificate, she did take, under the statutes of the state of Texas, a life estate in one third of his lands, with remainder to his children. Article 1646, Rev. St. Tex. Mrs. Emanuel died November 16, 1888. The statute relied upon by the defendants in error does not run against a remainder-man during the pendency of the life estate. This appears by the language of the statute, and is well supported by authority. See Cook v. Caswell, 81 Tex. 678, 17 S. W. Rep. 385; Beattie v. Wilkinson, 36 Fed. Rep. 646; Pickett v. Pope, 74 Ala. 122, and cases there cited. The charge complained of was certainly erroneous as to one third of the lands sued for, if not for the whole tract, conceding, for the argument only, that, except as to Mrs. Emanuel's one-third interest, the action was barred by the statute. The judgment of the circuit court is reversed, and the cause remanded, with instructions to award a new trial.