## WILLIAMS *v.* HAGOOD.

Where a bill shows no equity in the complainant, and contains no averment that he has been injured by certain statutes of a State, this court will not pass upon an abstract question the object of which is plainly to obtain a decision touching their constitutionality, but will dismiss the bill without prejudice.

APPEAL from the Circuit Court of the United States for the District of South Carolina.

The facts are stated in the opinion of the court.

*Mr. Denis McMahon* for the appellant.

*Mr. Le Roy F. Youmans,* Attorney-General of South Carolina, *contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

This is a bill in equity against the comptroller-general of the State of South Carolina, the county treasurer of Charleston County, in said State, and the assignees in bankruptcy of the Blue Ridge Railroad Company, in which the relief sought is an injunction commanding the comptroller " to cease from refusing to levy a tax for retiring " certain certificates of the State indebtedness, and commanding the county treasurer " to cease from refusing to receive the same for taxes and dues to the State, except to pay interest on the public debt."

The facts of the case, so far as they are exhibited by the bill, and so far as they are material for present consideration, are as follows : —

By an act of the legislature of the State, enacted March 2, 1872, reciting in its preamble that in pursuance of a former act the guaranty of the faith and credit of the State had been indorsed on four millions of dollars of bonds issued by the Blue Ridge Railroad Company, and that it was desired to recover and destroy the bonds thus issued and relieve the State from the liability incurred by its indorsement and guaranty thereof, the State treasurer was directed, with the written consent of the railroad company, to require the financial agent of the State to deliver to him for cancellation all the bonds of the company indorsed and guaranteed as aforesaid, then in the agent's possession and held by him as collateral security for advances.

The second section of the act enacted that upon the surrender by the company to the State treasury of the balance of the said four millions of dollars of bonds thus guaranteed by the State, the State treasurer should be authorized and required to deliver to the president of the railroad company treasury certificates of indebtedness (styled revenue-bond scrip) to the amount of $1,800,000, executed in a manner directed afterwards in the act. And if the company should not be able to deliver all of said bonds at one time, the act required the treasurer to deliver to the said president such amount of the treasury certificates as should be proportioned to the amount of bonds delivered.

The third section made it the duty of the State treasurer, in order to carry out the purposes of the act, to have treasury certificates of indebtedness prepared, to be known and designated as "revenue-bond scrip of the State of South Carolina," which should be signed by the treasurer, and which should express that the sum mentioned therein is due by the State of South Carolina to the bearer thereof, and that the same would be received in payment of taxes and all other dues to the State, except special tax levied to pay interest on the public debt.

The fourth section pledged the faith and funds of the State for the ultimate redemption of the scrip, and required county treasurers to receive it in payment of all taxes levied by the State, except in payment of special tax levied to pay interest on the public debt. It also required the State treasurer and all other public officers to receive the same in payment of all dues to the State; and, still further to provide for its redemption, the section levied an annual tax of three mills on the dollar in addition to all other taxes on the assessed value of all taxable property in the State, to be collected in the same manner and at the same time as might be provided by law for the levy and collection of the regular annual taxes of the State. And the State treasurer was required to retire, at the end of each year from their date, one-fourth of the amount of the treasury scrip authorized to be issued, and to apply to such purpose exclusively the taxes by the act required to be levied.

The sixth section required the guaranteed bonds to be cancelled and destroyed on their delivery to the treasurer.

In obedience to this act, the revenue-bond scrip was prepared and signed by the State treasurer. When this was done, a large part of the four millions of dollars of bonds of the railroad company, indorsed and guaranteed by the State, had been sold, or were pledged as securities for money borrowed by the company. The complainant was a purchaser for value of $417,000 thereof, and he was the *bona fide* owner and holder of them when the act of March 2, 1872, was passed. Relying upon the faith of the State as pledged in the said act of its legislature, and in the said certificates of indebtedness, he consented to exchange the bonds, amounting to $417,000, for said treasury certificates, amounting to $166,000; and the exchange was made. His bonds, guaranteed as above stated, were delivered to the State treasurer, and they have been cancelled. The railroad company and the State have thus been discharged from all obligation to pay the bonds, and the complainant holds in lieu thereof only the certificates of indebtedness to the extent of $166,000.

After this exchange had been effected, the bill charges, and it appears, that the State, in various ways, legislated in such a manner as practically to deny the obligation apparently assumed in the certificates of indebtedness, or revenue-bond scrip. By an act approved Oct. 22, 1873, the legislature repealed the fourth section of the act of March 2, 1872, by which a tax was levied for the redemption of the scrip, and forbade the comptroller-general to levy any tax, for any purpose, unless expressly thereafter authorized therefor. By another act, approved Dec. 22, 1873, the county auditors and county treasurers of the State were forbidden to collect, or cause to be collected, any tax other than such as were levied by that act, unless expressly authorized thereafter so to do. This legislation was manifestly inconsistent with the undertaking of the State expressed in the act of March 2, 1872, and in the revenue-bond scrip issued thereunder, and its constitutionality and obligatory force would be a legitimate subject for consideration if the complainant had placed himself in a position to invoke our judgment. But he has not. His bill does not aver that he has been injured, or will be injured, by this legislation, or by any act or neglect of the comptroller-general or the county treasurer. It does not

aver that the comptroller-general has neglected or refused to perform every duty imposed upon him by the statute under which the revenue-bond scrip was issued, nor even that he threatens such neglect or refusal. It does not aver that the county treasurer has refused, or even threatened to refuse, receiving the complainant's scrip, or any scrip, in payment of taxes or dues to the State, other than taxes levied to pay the interest on the State debt. It does not aver any demand from the State treasury, or any tender to the county treasurer. Its object is plainly to obtain from this court a declaration that the legislative acts of Oct. 22 and Dec. 22, 1873, are unconstitutional, because impairing the obligation of the contract made by the act of 1872, and the certificates thereby authorized and thereunder issued, and this without any averment that the complainant will be injured by them. The question presented to the court is, therefore, merely an abstract one; such a one as no court can be called upon to decide, and the bill shows no equity in the complainant. Hence it was properly dismissed in the court below, and it must be dismissed here, but without prejudice to the complainant's right to bring and prosecute another suit, when he shall be in a condition to exhibit any equity in himself.

*So ordered.*