**BUDER et al. v. FRANZ et al., and three other cases.**

Circuit Court of Appeals, Eighth Circuit.
May 16, 1928.

Nos. 7903, 7904, 7906, 7911.

1. Action ⬅62—Suit by remaindermen against trustees of life tenant before life tenant's death, for accounting as to securities, held not premature, where trustees denied interest of remaindermen.

Where life tenant placed securities in trust under agreement that all of the life tenant's property should be held by the trustees to be administered as part of life tenant's estate, and trustees' bond was fixed at an amount far below the worth of the securities, and trustees' power extended to sale and transfer thereof, remaindermen had right to sue the trustees for an accounting before death of life tenant; trustees having refused accounting and denied remaindermen's interest.

2. Judgment ⬅736—Decree that life tenant was entitled to usufruct, benefit, income, profits, and earnings of property held not res judicata of right of remaindermen to have increases in corporate securities added to corpus of estate.

In suit brought by remaindermen in state court to determine nature and extent of their interests under devise, adjudication that testator's widow became "entitled to all of the usufruct and benefit of all of the property of the said deceased, and to all the income, profits, and earnings thereof," as life tenant, held not res judicata of right of remaindermen to have stock dividends and other increases in corporate securities decreed a part of the corpus of the estate, as distinguished from the property of the life tenant.

3. Judgment ⬅736—Amount of bond required of trustees in suit by remaindermen held not res judicata of value of remaindermen's interest.

Requirement by court, in remaindermen's suit for determination of their interests under will, that trustees give bond in specified amount, held not res judicata of issue of value of remaindermen's estate, where court made no finding that the amount of the bond was the amount of the value of the remainder of the estate or of the entire estate, and bond was given partly to protect the life tenant.

4. Estoppel ⬅78(1)—Remaindermen held not estopped to claim interest in property and securities held by life tenant's trustees, by agreement for exercise of rights to purchase additional stock.

Agreement between trustees of life tenant, life tenant, and remaindermen for exercise of certain rights given by corporation, in which estate held stock, to take additional stock, and agreement to save trustees harmless in making advancements for purpose of exercising such rights, held not to estop remaindermen from asserting claims to remainder interest under will in property held by the trustees, since the right to subscribe for additional stock was that of the remaindermen, and not of the life tenant.

5. Trusts ⬅272(3)—Life tenant and her trustee had no right to additional stock purchased pursuant to stock rights attached to stock constituting part of corpus of trust.

Rights given estate as stockholder to purchase additional stock in corporation constituted part of corpus of estate belonging to remaindermen, and only interest of life tenant therein was to the income from the stock purchased under such rights, if such purchase was by funds from the corpus of the trust, and life tenant and her trustees could not appropriate these rights through exercise thereof with the life tenant's money.

6. Estoppel ⬅78(1)—Remaindermen held not estopped to assert interest in securities by agreement of life tenant, or by assumption of life tenant's trustees, relative to exercise of rights to take additional stock.

Remaindermen held not estopped to assert interest in securities held by trustees of life tenant on account of agreement of life tenant that the stock distributed under exercise of rights to take additional stock might be treated as a partial distribution of her estate, or by assumption indulged in by trustees at time of agreement for exercise of right to take additional stock.

7. Trusts ⬅272(3)—Dividends on stock in trust estate are part of corpus of estate.

Stock dividends on stock held in trust estate are part of corpus, and not income from the estate.

8. Wills ⬅684(3)—Increase in stock in residuary estate through exchange and stock dividends held part of corpus, not passing to life tenant as income.

Under will whereby testator gave widow residue of estate during period of her natural life, and devised remainder in equal shares to his children after her death, shares of stock re-

ceived in exchange for shares constituting part of residuary estate, increase resulting in the exchange, and increase in amount of stock in form of stock dividends constituted part of corpus of estate, to be held for remaindermen, and did not pass to life tenant as income.

**9. Wills ⚯⚯684(3)—In absence of contrary direction, testator is presumed to have bequeathed stock subject to regular action of corporation as regards determination of principal and income on stock.**

Owner of stock may make such disposition thereof as he sees fit, but, where he has given no special direction on the question of what shall be considered principal and what income, it is presumed that he intended question should depend on the regular action of the corporation with regard to its shares.

**10. Life estates ⚯⚯5—Life tenant is in a sense trustee for remaindermen, and is liable for waste.**

Life tenant is, in a sense, a trustee for the remaindermen, with right to possess the property and enjoy income during lifetime, and with liability for waste to the corpus of the estate.

**11. Executors and administrators ⚯⚯3(1)— Remainderman, on life tenant's death, takes directly without administration.**

Remainderman, on death of life tenant, is entitled to receive directly property as to which tenant had only life estate and no administration can be had.

**12. Trusts ⚯⚯225—Determination as to who shall bear expense of trustees' bonds rests largely in sound discretion of chancellor.**

Determination as to who shall pay expense of procuring bonds for trustees is matter resting largely in sound discretion of chancellor, expense being usually placed on trust estate.

**13. Trusts ⚯⚯225—Court properly required remaindermen specifically protected by additional bond from life tenant's trustees to bear expense of bond.**

Where trustees appointed by life tenant to care for property of estate were required to give additional bond solely for protection of interests of specified remaindermen, requirement that the remaindermen so protected bear the expense of the bond was proper.

**14. Trusts ⚯⚯161—Decree that life tenant's trustees give joint bond for protection of remaindermen's interests should be modified, by providing bond separate as to each interest at election of owners of such interests.**

Where trial court in suit by remaindermen against life-tenant's trustees for accounting required joint bond in sum considerably below the value of the remaindermen's interests, decree should be modified by giving remaindermen opportunity to require separate bonds in sums not exceeding that of the joint bond.

**15. Trusts ⚯⚯227—Life tenant's trustees, denying right of remaindermen, held chargeable individually with costs in accounting suit by remaindermen.**

In suit by remaindermen against life tenant's trustees for an accounting as to remaindermen's interest, which the trustees and life tenant denied, trustees, whose course of conduct compelled litigation, were properly chargeable with costs in their individual capacity, on remaindermen's recovery.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by Ehrhardt W. Franz against Gustavus A. Buder, the Mississippi Valley Trust Company, as administrator of the estate of Walter G. Franz, deceased, Earl F. Nelson, as guardian ad litem, and others, in which the two defendants last named and others joined in the plaintiff's prayer for relief. From the decree, the defendant first named and others appeal, and plaintiff and the two last-named defendants and others cross-appeal. Modified and affirmed.

Oscar E. Buder and G. A. Buder, Jr., both of St. Louis, Mo. (A. W. Wenger and E. E. Schowengerdt, both of St. Louis, Mo., on the brief), for Gustavus A. Buder and others.

S. Mayner Wallace, of St. Louis, Mo. (Allen McReynolds, of Carthage, Mo., on the brief), for Ehrhardt W. Franz.

T. M. Pierce, of St. Louis, Mo. (Samuel H. Liberman, of St. Louis, Mo., John B. Hollister, of Cincinnati, Ohio, and A. Holt Roudebush, of St. Louis, Mo., on the brief), for Mississippi Valley Trust Co.

Earl F. Nelson, of St. Louis, Mo. (Wilfley, Williams, McIntyre & Nelson, of St. Louis, Mo., on the brief), for Earl F. Nelson.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

STONE, Circuit Judge. This litigation has been before this court three times—once, on questions of jurisdiction and parties (11 F.[2d] 854); once, on questions of practice and procedure, involving the modification of the order of this court on the above appeal (11 F.[2d] 854, 858); once, on an ancillary bill to protect and preserve the jurisdiction of the trial court (15 F.[2d] 797). The first trial was upon the merits but, as the decree thereon was a dismissal of the bill for lack of necessary and indispensable parties, there was no determination of the merits. On that appeal [our No. 7019, 11 F.(2d) 854], counsel argued various points on the merits but, as this court thought that necessary and indispensable parties were lacking, it did not examine the merits except so far as to answer the questions as to parties and jurisdiction. On the return to the trial court, the bill was amended bringing in all interested

parties and the second trial and decree were upon the merits. Generally speaking, the result of that decree was to grant the relief sought in the bill and by the interveners. From that result, the main appeal herein is taken. There are cross-appeals on costs and concerning the bonds required to be given under the decree.

## I. The Main Appeal.

These appellants argue their assignments under five headings. There is no material conflict in the evidence. The issues are as to the legal effect of the evidence. For an understanding of these issues an outline will be given of the material evidence with such further detailed statement, in connection with each issue, as may be necessary to develop the situation.

Prior to February 11, 1898, Ehrhardt D. Franz died testate in St. Louis, Mo., leaving an estate consisting (besides household goods and a small amount of cash) of (1) an undetermined interest in bonds, inventoried at $2,543.50; (2) bonds, inventoried at $24,750; (3) shares in various corporations, valued at $55,185; (4) notes, inventoried at $14,307.50; (5) insurance, inventoried at $1,000; (6) thirteen pieces of real estate. The residuary portion of his will was as follows:

"The rest, residue and remainder of my estate, whether real, personal or mixed property, I give, bequeath and devise unto my beloved wife Sophie Franz, for and during the period of her natural life.

"After the termination of the life estate of my wife, I give, bequeath and devise the remainder in equal shares, share and share alike, unto my children, Minna, Johanna, Ehrhardt, Ernest, Amanda, Gustav, Walter, Otto, Henrietta and Adelheide, and unto their heirs and assigns forever."

The estate was administered; the executrix discharged on March 10, 1900; and the residuary assets turned over to the wife (Sophie Franz) who was then 59 years old.

Among the assets of the estate turned over to Sophie Franz (in 1898) were 210 shares of the American Arithmometer Company. Thereafter, that company declared stock dividends of a like amount and, still later, the Burroughs Adding Machine Company acquired the assets and business of the Arithmometer Company and exchanged 4,200 of its shares for the above 420 shares in the Arithmometer Company. All of this took place by 1905.

January 30, 1909, Sophie Franz executed a trust agreement with G. A. Franz (one of the sons) and G. A. Buder (who had been counsel for the deceased, the estate, and later, of Mrs. Franz). This instrument conveyed from her to Franz and Buder, as trustees:

"All her right, title and interest of every kind and nature of, in and to the following described stocks, bonds, notes, mortgages, deeds of trust, obligations, securities, and assets now held, owned and controlled by her in her own right as her absolute property, or as life tenant under the last will and testament of E. D. Franz, deceased, to which reference is hereby made, or whether held, owned or controlled in either one or both of said capacities and more particularly described as follows, to wit: * * *

"3. Forty-two hundred (4200) shares of the capital stock of the Burroughs Adding Machine Company, evidenced by certificate No. ———, issued to Sophie Franz, said certificate including and embracing two hundred ten (210) shares of the capital stock of the American Arithmometer Company of St. Louis, Missouri, of the par value of one hundred dollars ($100.00), per share, inventoried as part of the estate of E. D. Franz, deceased; the said American Arithmometer Company having changed its name to Burroughs Adding Machine Company, and being now located in the city of Detroit, Michigan, reference being hereby made to the inventory of the estate of the said E. D. Franz, deceased. * * *

"7. Any and all other assets, securities, bonds, stocks, notes, mortgages, deeds of trust, collaterals, commercial paper, or other obligations received, acquired, held or owned by the undersigned, under and by virtue of the last will and testament of Ehrhardt D. Franz, deceased, dated August 9th, 1897, and duly filed and admitted to probate in the probate court of the city of St. Louis, Missouri, said court having jurisdiction of said estate, said will appearing of record in the recorder's office, of said city of St. Louis, Missouri, in Book No. 1441, page 443, to which said last will and testament reference is hereby made, and the same by such reference for all necessary purposes made part thereof."

The powers of the trustees were to collect and recover:

"All profits, and income, dividends, interest, earnings, and principal of the said stocks * * * or other assets, * * * and shall have and are hereby given and granted full power and authority, so far as is possible under the will and testament of said Ehrhardt D. Franz, deceased, to sell,

assign, exchange, transfer, convey, mortgage, pledge, incumber, or otherwise dispose of any or all of the said stocks, bonds, notes, obligations, mortgages, deeds of trust, collaterals, and securities, and the principal and proceeds thereof to them hereby transferred, assigned, conveyed and delivered, whenever in their judgment they deem it proper to do so, upon such terms, conditions, and provisions as they may deem best and for the best interests of the trust estate of the undersigned hereby created.

"In case of such conveyance, transfer, assignment, exchange, or other disposal of any of the assets, or any part of the assets, to them hereby conveyed, assigned, transferred, and delivered, they shall have and are hereby granted full power, right, and authority, and are hereby empowered, directed and authorized to invest and reinvest the proceeds of any such sale, transfer, or exchange, including principal, in such manner and in such form and securities as they may deem proper and for the best interests of said party of the first part and the trust estate hereby created."

Also they were empowered:

"To expend, disburse, retain, and pay out of said trust estate and funds, any and all assessments, charges and taxes, whether general or special, attorneys' fees, outlays, compensation, charges and costs of administration, necessary, incident or essential to and for the care, protection, preservation, administration, management and distribution of the assets hereby conveyed or hereafter acquired and are authorized and empowered to make, create, and pay all necessary debts, expenses and outlays for repairs, betterments, or improvements, which they may deem necessary or proper for the protection, preservation, improvement, sale or transfer of any and all real estate of which they may become owners as such trustees, whether acquired by foreclosure or otherwise, and are authorized and empowered to make any and all such other payments, outlays, and expenditures as they may deem necessary, expedient or proper for the protection of such real estate and the assets of such trust estate."

Certain disbursements to Mrs. Franz and to the children (or their heirs) were provided for as follows: $4,000 annually "shall" be paid to Mrs. Franz "providing the income, rents, earnings, and profits of the estate which they may hold and securities hereby conveyed, admit of such payments being made," with the power, in named emergencies, to "in their discretion increase said quarterly payment to her to such an amount, and for such time and upon such terms and conditions as they may deem best and proper"; after these payments to Mrs. Franz, the trustees "may pay" $625.00 quarterly to each of the ten children (or the heirs thereof) but:

"In the event the earnings, income, rents, receipts and profits received by said trustees are not sufficient to admit of such payment quarterly to each of the distributees above named and cannot be conveniently made, then the said trustees, after so making payment to said Sophie Franz, of one thousand dollars ($1,000.00) quarterly, or such other sum as they may deem necessary as aforesaid may pay to each of the said distributees such sum as they may deem proper, but in no event and under no circumstances shall the said payment encroach upon or impair the principal and assets of the trust estate hereby created."

The instrument provided, also, that semi-annual statements of the condition of the trust estate should be made to Mrs. Franz and:

"If it appears from the statement of said trustees that there remains on hand any earnings, income, rents, receipts and profits from the said trust estate, which have not been drawn by or set aside, or paid out for account of said Sophie Franz, or to the distributees above mentioned or otherwise expended as herein provided, such sums shall be invested and become and remain as part principal of said trust estate hereby created."

The payments were to be made to Mrs. Franz during her life:

"And upon her death all these stocks, bonds, notes, collaterals, commercial paper, mortgages, deeds of trust, securities or other assets to them hereby conveyed or hereafter acquired or by them held, owned or controlled as such trustees, and any and all real estate by them acquired as such trustees, shall be held by them for account of the estate of said Sophie Franz, to be administered by the probate court of the city of St. Louis, Missouri, in accordance with the last will and testament of said Sophie Franz, and in accordance with the laws of the state of Missouri in such case made and provided."

The trustees were required to employ "Buder & Buder as their counsel and attorneys in the management and administration of said estate" and to appoint Oscar E. Buder (member of Buder & Buder) as the successor of either trustee. The certificates of stock in the Burroughs Company (and in two other companies—30 shares of the Germania Savings Institution and 50 shares of the Third National Bank of St. Louis, Mo.) were to re-

main in a designated safety deposit box which could not be opened unless Mrs. Franz and both trustees were present—she to have no power to remove any of such stock without "the consent and in the presence of both of said trustees." What was to be done with other securities or valuable papers is not designated although 300 shares in two other companies and 20 bonds ($1,000 each) are described therein. Also an irrevocable power of attorney given the trustees to vote the Burroughs, Germania and Third National stock at all stockholders' meetings and for all purposes—nothing said as to the stock in other companies. There was no requirement that any bond be given by the trustees.

About sixty days after this trust deed was executed, Ehrhardt W. Franz (one of the sons) brought an action in the state court, at St. Louis, Missouri, attacking the validity of the trust agreement, seeking to have it set aside, a receiver appointed and for other relief. The decree therein sustained and construed the trust agreement and required the trustees to give a bond of $100,000 "for the use and benefit of any and all parties interested in said trust estate" and to charge the cost and expense thereof to the trust estate.

Thereafter, dissention arose between Ehrhardt W. Franz (one of the sons) and the trustees which resulted in this suit. The parties defendant were Mrs. Franz, the trustees, the six children then living and the heirs, guardians of heirs and administrators (or executors) of three children who had died after the father, Ehrhardt D. Franz. The amended bill sets forth that the trust estate, coming from the estate of the father, exceeds three million dollars in value and includes 31,500 non-par shares and 7,875 preferred shares in the Burroughs Adding Machine Company besides other stocks, bonds and securities; that the bond of $100,000 is "wholly inadequate in amount"; that the trustees refuse to give plaintiff "any information or account" concerning the "present nature, condition, extent and value of the various properties taken by them as aforesaid from the life tenant"; that the trustees are asserting and contending that "plaintiff no longer has or owns his said remainder interest in said properties." The prayer is for disclosure and accounting, for restraint in disposing of the Burroughs stock, for a bond to plaintiff to protect his remainder interest, for an adjudication of the vested interest of plaintiff, and for general relief.

The administrator of the estates of Ernest H. Franz and of Walter G. Franz (two deceased sons) and the guardians ad litem of several grandchildren (heirs of deceased children of Ehrhardt D. Franz) answered, praying substantially the same relief as sought in the amended bill.

Answers were filed by G. A. Buder (one of the trustees), jointly by Mrs. Franz and the trustees, G. A. Franz and G. A. Buder, by the other defendants jointly. In so far as the issues presented on this main appeal are involved, those answers were as follows: First, that the action was premature because the parties seeking relief have, until the death of Mrs. Franz, "no right to the possession or enjoyment of any remainder interest, if any he has, and no right to have the amount or value of such interest, if any, determined or ascertained." Second, denies the right of such parties to "demand any security." Third, denies any duty to furnish any information or account. Fourth, estoppel to assail trust agreement and bound thereby because of receipt of payments thereunder. Fifth, that the decree in the state court suit found that "any and all stock dividends were part of the earnings, usufruct, profits and income of said estate to which the life-tenant was entitled in her own right," which made the interest of the children res adjudicata. Sixth, estoppel because of agreements made January 7 and 30, 1920. Seventh, the parties seeking relief have "no interest, remainder or otherwise, under the will of * * * Ehrhardt D. Franz" because of certain advancements and payments in excess of the value of their shares in the estate of Ehrhardt D. Franz, deceased.

The decree herein determined that the increase of Burroughs stock (as well as certain other property) belonged to the corpus of the residuary estate of Ehrhardt D. Franz, deceased; that the plaintiff had a one-tenth vested right, as remainderman under the will (the complaining defendants having similar rights); that such remaindermen will be entitled to possession thereof upon the death of Mrs. Franz, the life tenant; that the trustees file, within 30 days, a complete statement, under oath, of the property coming to their hands and their administration thereof, and, thereafter, render semiannual statements to the parties here asking relief; that the trustees, within 30 days, give bond for $500,000 for the "joint and several" protection of the parties here asking relief, said bond to be additional to the existing bond for $100,000 and the cost thereof to be paid by or charged to such parties. Jurisdiction was expressly retained to order an accounting and for other necessary orders and de-

crees. The costs of this proceeding to be paid by the trustees and charged "to the trust estate."

## Issues on Main Appeal.

Appellants argue here five matters. One is a matter of procedure—that this action is prematurely brought. Two are urged as a bar to recovery—res adjudicata and estoppel. Two have to do with the merits of the action on the main facts—the increase of Burroughs Company stock is income and, therefore, the property of the life tenant and the intent of the testator, Ehrhardt D. Franz.

## Premature Action.

This contention is that while the life tenant survives, there can be no action to adjudicate title of the remaindermen or to protect the remainder estate. The present action does not involve nor seek to affect the enjoyment of possession or other rights of the life tenant. Its sole purpose is to protect from spoliation and loss property which is in possession of the life tenant, but alleged to belong to the estate coming to the remaindermen (with absolute right of possession upon death of the life tenant), and, as to which, the life tenant is entitled only to the income therefrom. Therefore, the legal issue is whether a remainderman is entitled to equitable relief to have protected property belonging to him in the rightful possession of the life tenant who is entitled to the income, for life, therefrom. As a necessary incident to such relief (if allowable), the remainderman must prove that he is such as to the property involved but this is not, a proceeding where the only or main purpose is to have the title of the remainderman adjudicated—it is a bona fide action to protect a remainder estate alleged to exist.

Appellants rely upon several state cases and the following cases in the Supreme Court or in inferior federal courts: Williams v. Hagood, 98 U. S. 72, 25 L. Ed. 51; Marye v. Parsons, 114 U. S. 325, 5 S. Ct. 932, 962, 29 L. Ed. 205; Singer Mfg. Co. v. Wright, 141 U. S. 696, 12 S. Ct. 103, 35 L. Ed. 906; United States v. Evans, 213 U. S. 297, 29 S. Ct. 507, 53 L. Ed. 803; Muskrat v. United States, 219 U. S. 346, 31 S. Ct. 250, 55 L. Ed. 246; Arnold v. Garth (C. C.) 106 F. 13; Pluche v. Jones (C. C. A.) 54 F. 860; Preston v. Smith (C. C.) 26 F. 884. The Williams and Marye Cases involved the validity of state statutes relating to securities issued by the state and in each the court said that no existing or threatening injury was alleged and, therefore, the issue presented was pure-

ly abstract and courts would act only upon legal rights actually in controversy. The Singer and Evans Cases were refused determination because the issues therein were purely moot. The Muskrat Case refused decision because the issue was not a justiciable controversy. The Arnold and Pluche Cases held merely that a statute of limitations did not begin to run against a remainderman until his right to possession accrued. The Preston Case (being a ruling on demurrer to a bill) held the action was "more like an effort to establish a doubtful title than a proceeding to protect from serious wrong a clear or adjudicated title" (page 889), and that "only upon an adjudicated or a clear title will a court of equity issue an injunction to restrain waste" by the life tenant. Thus, it appears that none of the above cases are applicable here nor are any statements in the opinions therein except those above quoted from Judge Brewer in the Preston Case. Those expressions clearly imply that, at least under certain circumstances, such right of action would exist during the life estate.

However, the matter is not in doubt. In Cross v. Del Valle, 1 Wall. 5, at page 15, 17 L. Ed. 515, the court said:

"A remainderman may have a decree to protect the estate from waste, and have it so secured by the trustee as to protect his estate in expectancy. The court will interfere under all needful circumstances to protect his rights, but such cases do not come within the category of mere declaratory decrees as to future rights."

Undoubtedly, the same rule prevails in the state courts. See 23 R. C. L. 579, where it is said:

"One who has a vested remainder in land has a right to protect the estate, so that he may receive the same when it ought to come to him by the terms of the limitation, and may maintain a proper action for any injury to the inheritance, committed or threatened, whether by the tenant in possession or by a stranger."

Also, at page 580, it is said:

"While a court of equity will not maintain a bill merely to declare future rights, it will interfere in all needful cases to protect the rights of remaindermen."

Again, at page 581, the right of the remainderman to require security bond and accounting (the relief here sought and accorded by the trial court) is stated as follows:

"Formerly it was the practice to exact from the tenant for life security that the property should be forthcoming on the happening of the contemplated event. This se-

curity is still required in exceptional cases. But, before security for the forthcoming of the property at the termination of the life estate will be required, the remainderman must have reasonable grounds to apprehend the loss or removal of the property, or that his rights are in danger.

"139. *Filing of Inventory.* Unless the remainderman can show some necessity for exacting security, the only remedy which he now has is to require the tenant to make an inventory which shall show the property which he received, and to which the remainderman will become entitled upon the termination of the particular estate. And, though an inventory has been filed, the tenant, upon a proper showing of real danger, may be called on to account and be required to give bond.

"140. *Seizure and Impounding of Property.* The property may also be seized and impounded for the protection of the remainderman. Should the tenant attempt to sell, or in any other mode waste or misuse the property, so as to threaten its destruction, the court may impound it, that is, take it into the hands of the court, by its officer, and give the first taker the profits. The practice is to require security for the lawful use of the property during the life estate, and if this is not given, then pursue the mode of seizing upon the property."

Also in 21 C. J. at page 996, § 153, it is said:

"Since a remainderman has only an estate to vest in possession in futuro, he is entitled neither to actual nor to constructive possession of the property until the termination of the particular estate. He may however bring an action in equity during the lifetime of the life tenant to preserve the property, and, without taking actual possession to complete his title, he is entitled to all the remedies which may be necessary to protect and enforce his right at law."

Again, at page 1013, § 172, it is said:

"Where the property is in the hands of a trustee any breach of trust or improper conduct on the part of the trustee is a ground for equitable relief, and where a trust deed has been set aside under a decree fraudulently obtained, the remainderman may maintain a bill to have the property restored to the original trust. If the trustee is already under a valid and sufficient bond to protect the remainder interest, the remainderman is not entitled to any other relief; and the remainderman cannot, during the continuance of the life estate, sue on the trustee's bond to recover any part of the amount wasted, although he could proceed in equity to compel the trustee to bring the money into court to be invested. The remainderman may maintain a suit for the appointment of a new trustee and for an accounting."

Also at page 967, § 105, it is said:

"*Right to Equitable Relief in General.* A remainderman or reversioner unless barred by laches, is entitled to come into equity by a bill quia timet for the protection of his interest when the property in the hands of a life tenant is in danger of loss, deterioration or injury, or when the life tenant is claiming a right to the property adverse to that of the remainderman."

Also, at page 967, section 106 states that, under certain circumstances, injunction may be employed to protect the remainder estate; page 968, section 107, that accounting may be had; page 968, sections 108 and 109, that sequestration and a receiver are sometimes proper. The above statements in Ruling Case Law and in Corpus Juris are based upon abundant citations from various state courts—to which may be added later citations as follows: Abbott v. Wagner, 108 Neb. 359, 188 N. W. 113, 121; Ivey v. Lewis, 133 Va. 122, 112 S. E. 712, 716; Newport v. Hatton, 195 Cal. 132, 231 P. 987, 994; Commercial Building Co. v. Parslow (Fla.) 112 So. 378, 381; Huey v. Brock, 207 Ala. 175, 92 So. 904, 905; Powe v. Payne, 208 Ala. 527, 94 So. 587; Colburn v. Burlingame, 190 Cal. 697, 214 P. 226, 27 A. L. R. 1374; Hodgman v. Cobb, 202 App. Div. 259, 195 N. Y. S. 428; In re Niles, 122 Misc. Rep. 17, 202 N. Y. S. 475; Thomas' Adm'r v. Thomas, 220 Ky. 101, 294 S. W. 776. The last four cases deal with protecting bonds.

[1] This record leaves no doubt that these trustees, the life tenant and several of the remaindermen are denying any right or interest of plaintiff to any property in the possession of the trustees and especially to the increases of stock in the Burroughs Company. Also, all of the property is in the form of securities which might be easily disposed of. These securities are concededly worth more than $4,000,000, yet the trustees are under a bond of only $100,000. Also, the trustees have always refused to give plaintiff any inventory or accounting and persistently deny his right to such. Also, the trust agreement provides that, on the death of Mrs. Franz (now more than 83 years old), *all* of the property "shall be held by them for account of the estate of said Sophie Franz, to be administered by the probate court of the city of St. Louis, Missouri, in accordance with the last will and testament of said

Sophie Franz, and in accordance with the laws of the State of Missouri in such case made and provided." If this quoted provision were followed, *all* of this property would be subject to various taxes, fees and costs (in course of such administration) which should not attach to any of such property belonging to the remaindermen because such would be deliverable direct to them by the trustees, upon termination of the life estate, and would not pass through the administration of the estate of Sophie Franz.

The above discussed law leaves no doubt that equity does afford, during the life tenancy, remedies for remaindermen to protect their estates and the above facts make it equally clear that a situation is here present justifying the use of such remedies at this time. Therefore, the suit was not prematurely brought.

### Res Adjudicata.

[2] Appellants contend that the decree (June 16, 1910) in the state court suit brought by plaintiff, shortly after the trust agreement was made, determined that "the stock dividends and other increases" in the property belonged to the life tenant and not to the remaindermen. The supporting argument takes two lines.

The first is that the fourth finding of that court was that Sophie Franz was entitled to all of such increases. That finding is as follows:

"4. The court doth further find that under and by virtue of the terms of the will of said Ehrhardt D. Franz, deceased, the defendant Sophie Franz, during her natural lifetime, became and was and is entitled to all of the usufruct and benefit of all of the property of said deceased and to all of the income, profits and earnings thereof, in her own right and absolutely."

Standing alone, this language is far from meaning that increases in the corpus of the estate, as distinguished from income therefrom, is the property of the life tenant. Nor do the words "profits and earnings," used in conjunction with "income," suggest such a meaning. The obvious meaning of the entire paragraph is that Sophie Franz is entitled to the revenue produced by the estate, in the nature of income. But even supposing the paragraph were ambiguous and, taken alone, might have either of the above meanings, yet the issues presented to the court and the entire decree leave no doubt.

The petition therein was an attack upon the trust agreement as being contrary to the rights of plaintiff under the will because it

turned over to trustees property which would, at the end of the life estate, belong to the remaindermen and in which they had a present vested interest; also, that this property was being managed and wasted by the trustees without information or accounting to the remaindermen and without "being amenable to the plaintiff and the other remaindermen named in the said will by any bond or security whatever." It set forth that G. A. Buder (trustee) was denying that plaintiff had "any vested interest in the said property" and that plaintiff was the owner of "a one-tenth vested interest in the corpus of the aforesaid property." The prayer was for cancellation of the trust agreement and delivery of the property to a receiver; that the court construe the will and determine the rights and interests of the parties named therein and "whether their interests became contingent or vested at the death of the aforesaid testator"; and for general relief.

A joint and separate answer was filed by the trustees and other defendants (Mrs. Franz and other of her children). This answer alleged that Mrs. Franz owned absolutely considerable property which did not come from her husband's estate or which "had been acquired by her out of income which was hers." Further answering:

"These defendants say that at the time that she executed said instrument of January 30, 1909, defendant Sophie Franz was possessed in her own exclusive right as aforesaid of certain property and had a life estate and life interest in the property derived by her from the estate of her said deceased husband, and that the object and purpose of said instrument was to transfer to her son, the defendant G. A. Franz, and to defendant Buder, all such interest, right and title as she might and could properly and lawfully convey; that she intended to convey, and by said instrument did convey, to said two named defendants all of her said life estate, and no more, in the property so derived from her said deceased husband, and the absolute title to the property owned by her in her own exclusive right; that her object and purpose was to enable said two named defendants to distribute the income of all of said property, that in which she had but a life estate and that which belonged to her absolutely, between herself and her nine children, including the plaintiff, and her two grandchildren, the minor defendants herein. That in order to accomplish such purpose, she provided that $4,000 annually should be paid to her in quarterly installments and that $2,500 annually, in like installments, should be paid to each

of her said children and to the defendant Sherman H. Kleinschmidt for said grandchildren. That she expressly, however, provided that in making such distributions there should be no encroachment on or impairment of the principal assets thus conveyed to said two defendants. That she intended by said conveyance to provide, and she did provide, that on her death so much of said property as belonged to her absolutely and exclusively should be disposed of in accordance with her last will and testament and that so much of said property as was not hers exclusively and absolutely should be disposed of in accordance with the laws of Missouri in such case made and provided. * * *

"Defendants deny that said instrument attempts to dispose of any part of the estate of E. D. Franz, in contravention of his will, and deny that said defendant Buder has denied that the remaindermen have any interest in said property and has denied them or plaintiff any information to which they or he is entitled; also deny that said defendant Buder has declared that the remaindermen have no voice in the management, control or preservation of said property; but in that connection state that the said Buder has maintained, and these defendants also maintain, that the management and control and preservation of the property coming from the estate of said E. D. Franz is in defendant Sophie Franz or her grantees or assigns, during her lifetime, and that in any property acquired by her out of the income, the sole and exclusive management is in her and in her grantees or assigns, and that the remaindermen have no interest whatever in such last mentioned property.

"Further answering, these defendants say that defendant Sophie Franz had the power and the right to execute said instrument of January 30, 1909, as to the property in which she had a life estate, to the extent of her life interest, and had the right and the power to deliver said property to defendants Buder and Franz, to be held by them for and during the period and lifetime of the said Sophie Franz; and that as to property which belonged to said defendant Sophie absolutely and exclusively, she had the right to turn over and deliver the same to said defendants G. A. Franz and Buder without any limitation or restriction whatsoever.

"Further answering that part of the petition wherein plaintiff claims to have a vested interest in the property aforesaid, to the extent of at least $45,000, these defendants state that an undivided one-tenth interest in the estate left by said E. D. Franz, subject to the life estate of said defendant Sophie Franz, does not exceed the amount of $10,000; and that as a matter of fact, plaintiff has already received and accepted, by way of payments on account of his remainder interest, from defendant Sophie Franz, amounts exceeding in the aggregate $20,000.

"Further answering, these defendants say that none of the property whatsoever which was left by E. D. Franz, deceased, has been injured, wasted or destroyed; deny that there ever has been any threat on the part of defendant Buder or on the part of any defendant herein to injure, waste or destroy any part of said property whatsoever; deny that it is intended by said defendant Buder or by any of the defendants, to injure, waste or destroy any of said property whatsoever. On the contrary, these defendants aver that all of said property has been well and carefully preserved and is so invested and so managed that upon the death of defendant Sophie Franz and upon the termination of her life estate, any and all property in which plaintiff may then be interested will be forthcoming.

"Further answering, these defendants state that the defendants Sophie Franz, G. A. Franz and Gustavus A. Buder are each and all of them entirely solvent and fully able to respond to any right or claim which plaintiff herein may at any time be able to establish in the property left by the said E. D. Franz upon his decease."

The answer closed with:

"Wherefore these defendants say that plaintiff should not now be permitted to question the right of said defendant Sophie Franz to the possession of the property given her for life by the last will and testament of her said deceased husband."

In so far as the point now being discussed is concerned, the findings of the court were that the remaindermen had "a vested remainder" in the residuary property coming from the estate of Ehrhardt D. Franz; that Mrs. Franz was entitled to the income therefrom for life; that this property and other property, belonging absolutely to Mrs. Franz, was turned over to the trustees; that, as to the former, she conveyed to the trustees "only her life interest therein and no greater or other interest" but, as to the latter, she conveyed her entire title; that as to the estate property, the trustees had no power to dispose of any but her life interest; that, on her death, the estate property "should be divided between the plaintiff and the children named in the will of said Ehrhardt D. Franz * * * in accordance with the terms and

provisions of said will" and her absolute property "in accordance with her last will and testament, or if she should die intestate, then under the statutes of descents and distributions of the state of Missouri." The findings and decree were included in one order. The decree part followed the findings with a possible ambiguity as to a matter not pertinent to this point.

From the above it is clear that no issue was presented to the court as to whether the increase in Burroughs stock or from any other property belonged to Mrs. Franz nor as to what particular property the rights of the remaindermen attached. The issue was broader and more general. It was whether there was any property to which such rights attached and whether such rights were contingent or vested. The findings and decree determined this issue by holding that there was such property (without any particularization) and that the rights of the remaindermen were vested.

Appellants contend that the use of the words "usufruct," "benefit," "profits" and "earnings," used in the state court decree, carry a meaning which is larger than "income" and cover the exchange and increases of Burroughs stock. Even if the issues in that action could justify a determination by that court of the specific interests of the life tenant—which they do not—yet the above contended result does not necessarily follow and we think should not. This estate comprised considerable other property (both real and personal) beside corporate stock and the above quoted terms might reasonably be and we think were used to cover only the various kinds of income from such varied property. As to "usufruct," see 39 Cyc. 874, and citations; as to "benefit," see 7 C. J. 1135, and citations; as to "profits," see 32 Cyc. 585, and citations; as to "earnings," see 19 C. J. 853, and citations.

[3] The second argument is that the amount of the bond ($100,000), required of the trustees by the court, is clear evidence that the court considered that amount to be the value of the remaindermen's estate and thus, indirectly at least, adjudged that the balance belonged to Mrs. Franz. The answer to this is that the court made no finding nor even hinted at the value of the remainder estate or of the entire estate turned over to the trustees and that the bond was not solely to protect the remainder interests but Mrs. Franz also, since it was required to be "for the use and benefit of any and all parties interested in said trust estate."

Therefore, we must conclude that there is no merit to this contention of res adjudicata.

### Estoppel.

Appellants contend here that an instrument dated January 7, 1920, operates as an estoppel to all claims that there is any remainder interest (by virtue of the will of Ehrhardt D. Franz) in any property held by the trustees. To understand the place of this instrument and its effect, it is necessary briefly to state some related facts. Among the assets of the estate of Ehrhardt D. Franz, were 210 shares in the American Arithmometer Company. During the administration of that estate, a hundred per cent. stock dividend was declared. These 420 shares were delivered to Mrs. Franz (the life tenant). During 1905, the Burroughs Adding Machine Company was organized to succeed the Arithmometer Company, took over the assets of the latter and exchanged its stock for that of the Arithmometer Company on the basis of ten to one. When the trust agreement of 1909 became operative, these 4,200 shares in the Burroughs Company were turned over to the trustees by Mrs. Franz. During 1917, the Burroughs Company declared a stock dividend of 200 per cent., making a total of 12,600 shares held by the trustees. Early in the year 1920, the Burroughs Company issued to its stockholders certain "stock rights" whereby each existing share was entitled to subscribe for and purchase one-half of a share of new capital stock at par—thus, the 12,600 shares had "rights" to purchase 6,300 new shares. At the time these "rights" were issued, the trust estate was not in position to make the purchase and apparently could not do so. These "rights" were valuable and estimated by the trustees and others interested in the trust property as being worth $75 per "right." The agreement of January 7, 1920 (relied upon for this estoppel), resulted from the above situation as to these "rights." It is (omitting signatures) as follows:

"This agreement, made and entered into this 7th day of January, 1920, by and between Sophie Franz of St. Louis, Missouri, temporarily sojourning at Santa Fé, New Mexico; Johanna F. Fiske, of Santa Fé, New Mexico; Ehrhardt W. Franz, of Webb City, Missouri; Ernest N. Franz, of Pasadena, California; Amanda F. Wheeler, of Denver, Colorado; Gustav A. Franz, of Clifton, Arizona; Walter G. Franz, of Cincinnati, Ohio; Otto B. Franz, of Los Angeles, California; Henrietta Holloway, of Chicago,

Illinois; Sherman H. Kleinschmidt and Helen Kleinschmidt, of the city of St. Louis, Missouri, parties of the first part; and G. A. Franz, of Clifton, Arizona, aforesaid, and G. A. Buder of the city of St. Louis, Missouri, trustees under a trust conveyance, dated January 30, 1909, parties of the second part, witnesseth:

"Whereas, under the terms of a certain trust conveyance of Sophie Franz to G. A. Franz and G. A. Buder, trustees, dated January 30, 1909, the parties of the first part and others are the beneficiaries of certain fixed quarterly distributions, as therein provided, to which trust conveyance reference is hereby made and the same by such reference made part thereof; and

"Whereas, under a certain supplemental agreement, dated December 26, 1913, the payments and distributions to said beneficiaries were increased, as in said supplemental agreement, provided, which supplemental agreement is by this reference made part hereof; and

"Whereas, it is the expressed wish and desire of said Sophie Franz to make an advancement in cash or securities to each of her said children and Sherman H. Kleinschmidt in behalf and for account of Helen and Eleanor Kleinschmidt, heirs of Minna F. Kleinschmidt, deceased, mentioned as beneficiaries under the said trust agreement, excepting her daughter, Adelaide Zimmerman, who, by reason of her marriage to Robert Zimmerman, a resident of Germany, is an alien enemy; and

"Whereas, there is no provision contained in said trust agreement whereby and whereunder any such advancement or distribution can be made to said children and beneficiaries, and the same can only be accomplished by consent and agreement among said parties; and

"Whereas, among the assets comprising said trust estate, created under the terms of said trust agreement, there are at this time twelve thousand six hundred (12,600) shares of the capital stock of the Burroughs Adding Machine Company, appearing in the name of Sophie Franz; and

"Whereas, the said trustees, as holders of said twelve thousand six hundred (12,600) shares of Burroughs Adding Machine Company stock, appearing in the name of Sophie Franz, will be entitled to certain rights to subscribe for new stock of the Burroughs Adding Machine Company to the extent of one-half share for each share of old stock, owned, being fifty per cent. of the present holdings of said trust estate, to wit, sixty-three hundred (6,300) shares at the price of one hundred ($100) dollars per share, par value therefor; and

"Whereas, the said trustees have no available cash or funds with which to subscribe for said sixty-three hundred (6,300) shares, being the sum of six hundred thirty thousand ($630,000) dollars to be paid as provided in the notice of the proposed increase of capital stock of said Burroughs Adding Machine Company, and

"Whereas, it is the wish and desire of said Sophie Franz that the trustees should distribute the rights to subscribe for such new stock among the distributees under said trust conveyance, excepting Adelaide Zimmerman, to the extent ten thousand eight hundred (10,800) rights or fifty-four hundred (5,400) shares, being twelve hundred (1,200) rights, entitling them respectively to purchase six hundred (600) shares of new stock; and

"Whereas, said distributees are anxious to receive and are respectively willing to accept the rights entitling them respectively to six hundred (600) shares of new stock as an advancement and partial distribution under the terms of said trust agreement and the supplemental agreement above referred to, and are willing to pay the subscription price of one hundred ($100) dollars per share therefor; and

"Whereas, the said trustees are willing to make such distribution and advancement, providing the said Sophie Franz and the said distributees and Sherman H. Kleinschmidt, in behalf of his daughter, Helen Kleinschmidt, and his minor daughter, Eleanor Kleinschmidt, will join in this agreement, consenting to such advancement and distribution and holding the said trustees harmless and indemnified of, from and against any and all liability by reason of having so made said partial distribution and advancement; and

"Whereas, the said Sophie Franz and the undersigned distributees are willing, jointly and severally, to hold the said trustees harmless and indemnify and protect them and each of them against any and all liability by reason of making such advancement and distribution; and

"Whereas, the said distributees are further willing to execute a noninterest-bearing receipt for such advancement and distribution, to be charged against their respective interests in said trust estate, the estate of Sophie Franz, or their respective interests, if any, in the estate of E. D. Franz (deceased); and

"Whereas, said Sophie Franz is anxious that said distribution be made even though

the consent of Adelaide Zimmerman and of Eleanor Kleinschmidt, a minor, cannot be obtained; and

"Whereas, to secure said distribution, she is willing that her estate shall be made liable and responsible in the event there be any liability on the part of said trustees, or either of them, because of making such distribution and advancement, without such consent, or for any other reason or reasons.

"Now, therefore, this agreement witnesseth:

"1. The said Sophie Franz, Johanna F. Fiske, Ehrhardt W. Franz, Ernest H. Franz, Amanda F. Wheeler, Gustav A. Franz, Walter G. Franz, Otto B. Franz, Henrietta Holloway, Sherman H. Kleinschmidt, and Helen Kleinschmidt, hereby jointly and severally bind ourselves and our and each of our respective heirs, executors, administrators and assigns, to protect and hold harmless and indemnified the said trustees, or either of them, of, from and against any and all liability of every kind and nature which they, or either of them, may assume or incur by reason of the making of a distribution or advancement of the rights entitling them respectively to subscribe to six hundred (600) shares of Burroughs stock, as hereinbefore mentioned.

"2. The said Sophie Franz agrees that in the event the said trustees, or either of them, incur any liability by reason of making such advancement or distribution, which shall not be fully protected, repaid and indemnified by herself and her children and distributees aforenamed, that then and in that event the said trustees, or either of them, may and shall be given a preferred claim and granted a priority and preference against the assets of her estate to the extent of any such claim or claims.

"3. The said distributees under said trust agreement and said Sherman H. Kleinschmidt hereby covenant and agree and bind themselves to execute proper receipts for such advancement or distribution of rights, entitling them respectively to six hundred shares of Burroughs stock as aforesaid, and stipulate and bind themselves that such receipts may and shall be used and will be accepted as a partial distribution of said trust estate, or the estate of said Sophie Franz, in the distribution of the same under her last will and testament, as provided for in said trust agreement.

"4. And the said Sophie Franz and the parties hereto hereby further covenant and agree that if, as soon as the inability of Adelaide Zimmerman to receive and accept an advancement is removed, that then and in that event and under such circumstances, the said trustees shall be, and hereby are, privileged to make a like distribution to said Adelaide Zimmerman, provided she paid said trustees the subscription price of one hundred ($100) dollars per share, or such amount as may have been paid on account of the subscription of said six hundred (600) shares by said trustees, it being understood that in the event of such distribution to said Adelaide Zimmerman, she shall likewise bind and obligate herself to the same extent in the protection of the said trustees against any and all liability on account of making such distribution and advancement to either one or all of said heirs and distributees.

"5. And the said Sherman H. Kleinschmidt, father of Helen Kleinschmidt and Eleanor Kleinschmidt, the latter a minor, hereby agrees to accept and receive the said advancement and distribution for account of his said two children and hereby stipulates and binds himself to obtain the consent and approval of said minor daughter in the making of such advancement or distribution as soon as she arrives at her majority. The said Helen Kleinschmidt hereby gives her consent and approval to such distribution and advancement by joining in the execution hereof.

"6. The said Sophie Franz and the distributees and parties hereby agree and bind themselves, jointly and severally, to protect, the said trustees, or either of them, of, from and against any and all claims or demands, of every kind and nature, which may be made against said trustees, or either of them, by any of the parties hereby or by any of the heirs or legal representatives of any of the parties hereto, by reason of the death of any one or more of said parties before the final distribution of said trust estate under the terms of the last will and testament of said Sophie Franz, or any claim or claims which may be made against them, or either of them, by said distributees or their respective heirs, or any of them, under the last will and testament of Ehrhardt D. Franz, deceased.

"7. And the parties hereto hereby further agree that the said trustees shall receive and may retain five per cent. of all such rights received from said Burroughs Adding Machine Company on account of any distribution made to the parties hereto as their compensation and commissions, the same as if final distribution or transfer of such part thereof had been made to the executor or legal representative of said Sophie Franz, in accordance with the terms of said trust conveyance or any other distribution which may

be affected by agreement under said trust agreement or the supplemental agreement above referred to."

[4, 5] The bare bones of this agreement are that these stock "rights" attached to stock "appearing in the name of Sophie Franz" which stock was subject to the trust agreement; that the trust agreement provided no method by which such "rights" could be taken therefromunder; that the trust estate lacked available funds to realize upon these "rights"; that the life tenant and all of the remaindermen wished distribution of such "rights" among the remaindermen in order that they might realize thereon; that some of such remaindermen were minors; that to secure this desired result and to protect the trustees in executing it, an agreement was advisable; that such distribution of the "rights" was authorized and such protecting indemnity contracted.

These "rights" were not income belonging to the life tenant but corpus belonging to the remaindermen. Miles v. Safe Deposit & Trust Co., 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923; Hite's Devisees v. Hite's Executor, 93 Ky. 257, 267, 20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189. The only interest therein, if any, of the life tenant was to the income from the stock purchased under those rights, if such purchase were by funds from the corpus of the trust. The life tenant nor the trustees had any right to appropriate these "rights" and make them the property of the life tenant through exercise of such "rights" with her own money. The only substantial thing acquired by the remaindermen through this contract was the protection of and realization upon their own property—the "rights." For such a consideration we are asked to determine that they gave up all rights and claims to any other property in the trust estate. That is, for the immediate privilege of exercising the right to subscribe $100 per share for 6,300 new shares in the Burroughs Company they gave up all claim to 12,600 outstanding fully paid shares in that company and rights in other property as well. We must decline to travel such an uninviting course.

[6] It is contended, also, that an agreement (dated January 30, 1920), by all the parties to the above agreement, made to the Burroughs Adding Machine Company to induce it to comply with the agreement of January 7, 1920, and to indemnify it for so doing, contains language upon which an estoppel should arise. The language relied upon is used for and in connection with Sophie Franz and not by these remaindermen. It is

27 F.(2d)—8

that "the said Sophie Franz, individually and for herself, her heirs and assigns, hereby agrees" that the rights and stock distributed under the agreement of January 7, 1920, "may be treated as a partial distribution of her estate under the terms of her last will and testament. ⁎ ⁎ ⁎" In crushing contrast, is the undertaking of the remaindermen to waive all rights to such "rights" or resulting stock "whether acquired under the last will and testament of E. D. Franz, deceased, or in any other manner."

It is urged, also, as bearing on this contention that one of the trustees, G. A. Buder, testified that the payment to the trustees of 5 per cent. of the stock "rights," provided for in the agreement of January 7, 1920, "was done on the assumption that this was all property of Sophie Franz which was distributed ⁎ ⁎ ⁎ and not the property of E. D. Franz estate." We think the agreement of January 7, 1920, must govern and not the "assumption" as to its meaning and effect indulged by one of the parties seeking to establish the estoppel.

### Increase of Burroughs Stock.

[7, 8] The Burroughs stock came in two ways. The first was by exchange of 4,200 shares of that stock for 420 shares in the Arithmometer Company. In 1905 the Burroughs Company was organized to succeed the Arithmometer Company and exchanged its shares for those of the latter. Obviously, this exchange made no change in the legal status of the shares in any respect here involved. It was a mere exchange or displacement. The 420 shares were clearly corpus coming from the estate of Ehrhardt D. Franz and anything for which they were exchanged would merely take the place of such shares. If there was an increase in value through the exchange, a fact not shown, it would not change the aspect that it was an increase in capital value and not of an income earned by capital.

The remainder and, by far, the greater amount of Burroughs stock came, after this exchange, in the form of stock dividends. That stock dividends are part of the corpus and not income therefrom or thereon is settled by authority which is binding upon us (McDonald v. Maxwell, 274 U. S. 91, 97, 47 S. Ct. 497, 71 L. Ed. 942; Gibbons v. Mahon, 136 U. S. 549, 10 S. Ct. 1057, 34 L. Ed. 525, and Brown v. Wisconsin Syndicate, 19 F. [2d] 198, this court) and the same rule prevails in Missouri (Hayes v. St. Louis Union Trust Co. [Mo. Sup.] 298 S. W. 91).

### Intent of the Testator.

[9] While the legal rule as to stock dividends is as above, an owner of stock may make such disposition thereof, in his will, as he may see fit. " * ∗ * The intention of the testator, so far as manifested by him must of course control; but when he has given no special direction upon the question as to what shall be considered principal and what income, he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings, and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares." Gibbons v. Mahon, 136 U. S. 549, 559, 10 S. Ct. 1057, 1058, 34 L. Ed. 525. The will of Ehrhardt D. Franz must be measured by the above quoted rule. In so far as pertinent to this question, that will is as follows:

"The rest, residue and remainder of my estate, whether real, personal or mixed property, I give, bequeath and devise unto my beloved wife Sophie Franz, for and during the period of her natural life.

"After the termination of the life estate of my wife, I give, bequeath and devise the remainder in equal shares, share and share alike, unto my children Minna, Johanna, Ehrhardt, Ernest, Amanda, Gustav, Walter, Otto, Henrietta and Adelheide, and unto their heirs and assigns forever."

[10] These provisions create a plain life estate in Sophie D. Franz—no more and no less. A life tenant is, in a sense, a trustee for the remaindermen (Bush Constr. Co. v. Withnell, 190 Mo. App. 33, 175 S. W. 260; 17 R. C. L. 626, and citations in note 10), with the right to possess and enjoy the use and income from the estate during life (17 R. C. L. 625, § 15) and a liability for waste to the corpus of the estate (Hill v. Ground, 114 Mo. App. 80, 89 S. W. 343; Tiffany, Real Property [2d Ed.] pp. 83, 949, et seq.; 17 R. C. L. 626).

Applying the rule above quoted from Gibbons v. Mahon, we must determine that this testator has "manifested" no intention and has "given no special direction upon the question as to what shall be considered principal and what income" and that, because he has not done so, "he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings, and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares." In short, all of this Burroughs stock here involved is corpus in which Sophie Franz has only a life estate.

[11] No issue is presented here as to the right of Sophie Franz to create a trust to manage, during her lifetime, the estate coming from her husband under the will as well as any property belonging to her absolutely. With the termination of the trust by her death, her absolute property will pass to administration (testate or intestate). As her death will likewise terminate the life estate, the remaindermen will, thereupon, be entitled to receive direct from the trustees the property not belonging to Sophie Franz absolutely—such property has no relation to her absolute property and no administration can be had upon it. Anderson v. Messinger (C. C. A. Sixth Circuit) 146 F. 929, 948, 949, 7 L. R. A. (N. S.) 1094.

### II. Cross-Appeals.

The cross-appeals deal with the amount, character and expense of the security required from the trustees by paragraphs 7 and 9 of the decree and with the payment of costs. Italicizing the particular parts involved, those paragraphs are as follows:

"7: That defendants, Gustavus A. Buder and Gustav A. Franz, trustees, within thirty (30) days from the date of this decree, give bond, properly conditioned and *in the sum of $500,000* to be approved by this court, for the protection and security of the said remainder interest, of plaintiff Ehrhardt W. Franz, *of the said remainder interests of the estate of Walter G. Franz, deceased, and of Ernest H. Franz, deceased, and of the remainder interest of Eleanor Kleinschmidt, an infant*, in and to said non-par value stock, any accretions thereto, said moneys described in paragraph 5 hereof, and any other property arising from and accruing out of such remainder interests, which may be in, or come into, the hands of said trustees, defendants. *Said bonds to be both joint and several as to the parties and property thereby secured and protected* and to be in addition to the existing bond provided for in and by the decree of the circuit court of the city of St. Louis, entered June 12, 1910. *The cost of such bond to be paid for by the persons, estates and parties named and set out in this paragraph as obligees therein, or charged to and deducted ratably from any moneys in, or coming into, the hands of the trustees, payable to said obligees.*"

"9. That the costs in this cause be paid by the said Gustavus A. Buder and Gustav A. Franz, trustees, *and the same may be charged by them to the trust estate.*"

[12, 13] The contentions as to security are that there should be separate bonds to each of the cross-appellants; that the amount of the bond is too low and that any expense in procuring a bond or bonds should be borne by the trustees. Who shall pay the expense, if any, of procuring such bonds is a matter largely resting in the sound discretion of the chancellor. It is not usual in bonds demanded from a trustee to require the expense thereof to be borne by the trustee. Usually, such expense is placed upon the estate in trust as being a proper expenditure for the benefit of such estate. Here, the protection sought and that provided in the decree is not for the entire estate but solely for certain specified interests therein. Therefore, it seems more proper that such interests should bear this expense than to place part thereof upon the other interests which are not asking nor securing such protection. We approve the provision of the decree requiring any such expense to be paid from the interests protected by the particular bond.

[14] The evidence is clear that the present and prospective value of the interests of the cross-appellants is considerably in excess of the bond amount ($500,000) named in the decree. Also, there seems no good reason why there should not be separate bonds for each interest represented by these cross-appellants—that is, a bond to Ehrhardt W. Franz, one to the estate and heirs of Walter G. Franz, one to the estate and heirs of Ernest H. Franz and one to the minor, Eleanor Kleinschmidt. Therefore, to afford each of said four interests the opportunity to secure a separate bond, the decree will be modified as follows: That any of said four interests may, within thirty days after receipt of the mandate by the trial court, file therein a written request for such separate bond in such sum (not exceeding $500,000) as may be stated therein; that, within thirty days after such filing, a separate bond in such sum shall be filed by the trustees, to be approved in all respects by a judge of the trial court; as to all of such four interests not filing such request, a joint and several bond in the sum of $500,000, to be likewise approved.

[15] As to costs: It is clear, from this record, that this entire controversy has been caused by the trustees. They have consistently and persistently refused to accord the cross-appellants the rights which were due them. They have gone further than this and have and do deny the existence of any and all rights and interest in the cross-appellants. Such course of conduct has compelled this litigation to establish those interests and to enforce and protect the resulting rights. The costs of this action up to the filing of the amended bill of complaint following the former appeal might properly be assessed against complainant and the then interveners because such costs were almost entirely incurred in connection with a mistaken theory of jurisdiction. However, if there has already been any assessment of such costs we leave such undisturbed. As to all costs accruing with and after the filing of such amended bill, we think they should be assessed against the trustees individually and the decree, in that respect, modified.

With the above modifications, as to security and as to costs, the decree of the trial court is affirmed.